BIGHAM *vs.* COLEMAN, trustee.

1. If two attorneys, representing three litigants, collected a fund, and one with the knowledge and approbation of the other, paid out the full amount to which two of the litigants were entitled, and paid to the other attorney the full amount of his fee for services rendered to the three clients from the amount remaining as the share of the third one, who was a trustee, this would be a diversion of the trust fund to the extent of two-thirds of the fee so deducted, and the attorney receiving the same could be sued jointly with the trustee, if the latter joined with him in the misapplication, or separately.

(*a.*) The consent and ratification of the trustee would not avail to discharge the party misappropriating the money from liability to the *cestui que-trust;* if he ratified with knowledge of the facts, he might render himself also liable.

(*b.*) The request contained in the thirteenth ground was covered by other portions of the charge.

(*c.*) Although a request to charge may state correctly an abstract principle of law, yet if it be inapplicable to the case, it should be refused.

2. There was no error in refusing to dismiss the declaration on the ground that it showed that the action was barred by the statute of limitations. The statute was pleaded; the question was submitted to the jury; and no exception was taken to the finding on that subject.

3. Where a sum of money had been recovered by two attorneys on behalf of three joint litigants, one of whom was a trustee, and after his death his successor brought suit against one of the attorneys on account of an alleged misapplication of part of the recovery which belonged to the trust estate, another of the former litigants was a competent witness to testify as to conversations between the attorney and the deceased trustee; but the attorney was not competent on his own behalf to testify what passed between himself and such trustee.

4. Where suit was brought by a trustee, and no plea denying that he was such was filed, it was not error to admit the order appointing him, although the petition therefor did not set forth the instrument creating the trust.

5. An original record of the superior court in another county than that of the suit cannot be proved by an attorney who claimed to have obtained its custody under an order of the judge of that court. The proper evidence is an exemplification of the record certified by the clerk. Any one who saw the original and knew the handwriting thereon could testify that it was in the handwriting of the person sought to be charged with it, if it were necessary.

Bigham vs. Coleman, trustee.

6. Receipts for money are only *prima facie* evidence of payment, and may be denied or explained by parol. It was, therefore, not error to permit the maker of a receipt in evidence to explain the items in it, or to cast up the various amounts and testify to the sum total for which it was given.

7. An affidavit of illegality made by one person is not admissible to charge another and distinct person with the liability therein stated.

(a.) Nor was such affidavit admissible to impeach the attorney who drew it, when he had testified from his own knowledge to facts happening previous to its making.

8. If answers are intelligible without the interrogatories on which they are based, they may be read without reading the questions.

9. The judge having charged fully on the subject of credibility and weight of testimony, properly refused to charge a request to the effect that the jury should be controlled by the sworn evidence, and not by the unauthorized statements of counsel, voluntarily made, reflecting on the character of a party to the cause.

10. A witness may be impeached by showing that he has sworn differently about the same matters at different times; and testimony to show that a witness failed on a former trial of the same case to prove material facts to which he swore on a second trial, was admissible.

11. It is unusual practice to read to the jury testimony tending to impeach a witness, and then withdraw the same and publicly abandon the effort, but it did no harm in this case, and was no ground for new trial.

November 20, 1883.

Attorney and Client. Trusts. Charge of Court. Ratification. Statute of Limitations. Witness. Evidence. Practice in Superior Court. Interrogatories. Before Judge HARRIS. Troup Superior Court. April Term, 1883.

Reported in the decision.

T. H. WHITAKER; A. H. COX; B. H. BIGHAM, for plaintiff in error.

FERRELL & LONGLEY, for defendant.

HALL, Justice.

The following statement, furnished by the reporter, presents as fully and fairly the leading and important facts,

and the questions made by this record, as could reasonably be expected or hoped, from its intricate and confused character. It is due to the clerk of the superior court to say that it is not his fault that it is thus entangled and deficient in method; he could only copy faithfully what was entrusted to him for that purpose. The blame, if any, attaches wholly to the counsel who arranged and made it up. The general assembly, at its last session, placed it in the power of counsel to make up brief and comprehensive, and at the same time accurate records. This is a step in the right direction, and it is to be hoped that other measures will be adopted by succeeding legislatures to facilitate the business of this court by relieving the proceedings brought before it of irrelevant matter, which it takes time and labor to eliminate from the real questions presented for review and determination. In the meantime we hope the profession will avail themselves willingly and liberally of the privileges extended to them by the act of the legislature.

The real controversy in this case was as follows: The plaintiff claimed that in a suit in which James S. Walker, Freeman Walker and Mrs. Coleman were interested, Bigham and Harris represented the two Walkers, but not Mrs. Coleman; that they had compromised the claim and had received $15,000.00 in settlement of the interests of all parties; that of this amount $10,005.00, had been paid out on claims against the Walkers; that from the balance Bigham received $1,000.00, Harris, $500.00 and one Stirling, $500.00, and only $3,000.00 was paid to the trustee of Mrs. Coleman, instead of the full amount of her one-third interest.

Defendant, on the other hand, claimed that he represented and performed services for all parties; that his associate counsel, Harris, received the $15,000.00 and paid the $1,000.00 to him before any distribution of the fund was made; that his services were well worth that amount, and it was satisfactory to the trustee. He denied the

misappropriation of funds charged against him, and contended that if payments of costs, etc., were made, they were for debts for which the trust estate was equally liable with the Walkers.

To show these respective positions, much confused and conflicting testimony was introduced.

The following brief statement will serve to explain the points made:

On December 20, 1869, William E. Coleman, trustee of Mrs. Frances C. Coleman, brought this suit against B. H. Bigham, alleging, in brief, as follows: On May 15, 1860, defendant received and took from N. F. Walker, Sr., $5,000.00 in settlement of an award and "umpirage," in a case in Upson superior court in favor of James S. Walker, Freeman Walker and Mrs. Coleman against N. F. Walker, executor of A. M. Walker, deceased. The money so received belonged to Mrs. Coleman, and was received by Bigham without authority, and misappropriated to his own use, and not paid to her on demand.

By amendment, it was alleged that Mrs. Coleman was a *feme covert* in 1860, and has since so remained; that Daniel Grant was her trustee until his death, on November 4, 1864, and there was no other trustee until September 16, 1866, when her husband was appointed; and that the money sued for was part of the trust estate.

Defendant pleaded the general issue.

On the trial, the evidence for the plaintiff was substantially as follows:

In 1858, Daniel Grant succeeded James S. and Freeman Walker, as trustees for Mrs. Coleman; in 1864, Grant died; and on March 1, 1866, Coleman was appointed trustee.

James S. Walker testified for plaintiffs, in brief, as follows:

In 1860, certain litigation was pending in Upson superior court, in which James S. and Freeman Walker and Mrs. Coleman were interested, being an arbitration and "umpirage" case, and N. M. Harris was the attorney of

Bigham vs. Coleman, trustee.

witness.   Witness employed B. H. Bigham to represent him and his brother, N. P. Walker, Jr.   He gave Bigham and Harris written instructions.   They compromised for less than he instructed, but he afterwards assented.   They did not represent Mrs. Coleman, and had nothing to do with her case.   They received in the compromise $15,000.00 for the interests of all parties.   They brought it to La-Grange.   Of this one-third belonged to Mrs. Coleman; $3,000.00 was paid to her trustee; Bigham got $1,000.00, one Stirling received $500.00, and Harris $500.00.   James S. Walker told Harris to pay over the remaining $2,000.00 to Grant, trustee.   Bigham said that there was a little matter between Mrs. Coleman and himself.   James S. Walker received and receipted to Harris for $6,000.00 in partial payment of his and his brother's shares.   He gave Bigham a note for $450.00 for his services to himself and his brother, and subsequently paid it.   In 1865, Coleman asked Bigham for the money.   The latter replied that "we have been through a devastating war," and he wanted some little fee.   He did not deny having the money.

To show the manner in which the amount received from the compromise was distributed, this witness (James S. Walker) testified, in brief, as follows:

"This receipt (blue paper receipt presented) I gave Bigham and Harris for our $6,000.00 in partial settlement. The paper sets forth the sum Freeman Walker and witness were entitled to.   That is the amount we directed N. M. Harris and B. H. Bigham to settle in Upson.   Gave this paper to Mr. Bigham and Mr. Harris together.   At the time the money was paid to Harris, there was $15,-000.00.   He brought it to LaGrange.   Harris and Bigham brought it together.   Bigham got $1,000.00; $1,500.00 was paid to W. M. Harris.   I receipted Mr. Harris alone for the $6,000.00.   He paid the $1,000.00 to Bigham.   I was in Mississippi when this occurred in Upson."

The blue paper receipt, as it appears in the record, was as follows :

"James S. Walker, N. F. Walker, Jr.,
  and Daniel Grant, trustee for
    Mrs. Frances C. Coleman         Bill, Award and Umpirage.
              *vs.*                 Decreed judgment in Upson
N. F. Walker, executor of Allen M.  Superior Court.
    Walker, deceased

Received of N. M. Harris, solicitor for complainants in the above stated case, three hundred dollars on the said case, two thousand seven hundred and thirty-three dollars and fifteen cents, of which considered as paid over May 19, 1860. This June 13, 1860.

    [Signed]                              DANIEL GRANT,
                                 *Trustee or F. C. Coleman.*

"James Neal, $5,870.00; E. A. Ivey, $407.23, P. W. Alexander, $363.79; Daniel Grant, $3,000.00; P. W. Alexander, $50.00; R. W. Sims, $50.00; B. H. Bigham, $1,000.00; W. L. Sterling, $3,000.00. Total collected, $15,000.00

              13,741.84    Balance by N. M. Harris, $1,258.06——
[In pencil] 13,741.84

        7——6, 741.84

"Cost paid in court : R. E. Martin Bill, 14.50 ; pd Chappell $10.00 ; cost in Goode & Horsley $22.00 ; Beall $11.00 ; Floyd $11.00 ; $68.50 cost in Savannah ; $55.10 Beunger's note $79.33 ; N. M. Harris $22.80 ; J Eunis & Co. $38.17.——$263.90.   [On paper pinned to the above.]

"James S. Walker *et al.*      Bill, etc., in Upson Superior Court.
      *vs*                  Verdict and decree for $15,000.00.
Nathaniel F. Walker *et al.*

"Received of N. M. Harris, solicitor in the above suit, six thousand, seven hundred and forty-one 84-100 dollars in part payment of the above decree.   This 18 Sept., 1860.

    [Signed]                              JAMES S. WALKER."

On back :

"This receipt is given in view of a general settlement with Mrs. F. C. Coleman and N. M. Harris counsel fees, and James S. Walker does not by this partial settlement recognize or acknowledge the compromise of this suit, as he deems that his instruction were not obeyed by said compromise.   This 19 Sept., 1860.

    Signed before delivery.              JAMES S. WALKER.
And figures "5,870.82—407.23—463.79—6,741.84."

The witness continued : " Was present when $3,000.00 was paid to Grant, trustee, in 1860, at Bigham's office. It was distinctly stated, when all were present that Stirling received $500.00, Harris $500.00, and Bigham, $1,000.00." [It was thus sought to show that Bigham and Harris, the

Bigham vs. Coleman, trustee

attorneys, received $15,000.00 from the compromise, paid out $10,005.00, and from the remaining one third, which belonged to Mrs. Coleman, the fees were improperly taken.]

James S. Walker was subsequently re-introduced, and allowed to give testimony, which the record recites as follows :

" Witness went over items in the blue paper Harris receipt, dated September 19, 1860, and specified items which he said amounted to $10,005.00, and said himself, Freeman Walker and Dr. Stirling owed and was paid out in Upson county ; that costs were owed in the Supreme Court and Upson superior court.

"$5,870.82 to Neal. Witness owed $407.23 to E. A. Spivey ; Freeman owed $363.79 to P. W. Alexander ; witness and Freeman owed $50.00 to P. W. Alexander ; witness owed $50.00 to Sims ; witness owed $3,000.00 to W. L. Stirling ; owed $263.90 costs."

Ferrell, one of the attorneys for plaintiff, testified, in brief, as follows : In 1869, attorneys were employed to bring suit against Bigham. When approached by witness, he made about the same statements as those stated above by Walker. He said that services had been rendered by which Mrs. Coleman had been benefited, and she ought to let the amount go by way of fees. Nothing was said about any employment by Grant ; his name was not mentioned.

The evidence for the defendant was, in brief, as follows In 1859, the Walkers and Mrs. Coleman were involved in various cases, including the arbitration of an equity case in Upson county, a case in the United States court, and certain rules involving a dispute about the fees of other attorneys, who had been representing these parties in other cases. (As to the rule cases, see 29 *Ga.*, 185, 193 ; 30 *Id.*, 237, 241.) James S. Walker, as general manager and agent for himself, his brother and sister, employed Bigham to act as advisory counsel and resident attorney in

these cases. Bigham was not to go out of his county, but was to advise, prepare evidence, etc. He was to receive $500.00 therefor. In the fall of 1859, James S. Walker came to Bigham and urged him to go to Upson county and try the cases. Bigham at first refused to go, because it was out of his circuit, and the fee for local services had not been paid; but subsequently he went, Walker promising to send the $500.00, which was already due. Bigham made Mrs. Coleman a party to the rule cases, and represented the interests of all three—the two Walkers and Mrs. Coleman. (This was denied by James S. Walker, as a witness for the plaintiff.) James S. Walker did not send the $500.00 due, but sent his note for $450.00, which he did not pay. At the May term, 1860, Grant, the trustee of Mrs. Coleman, was present and consulted with Bigham. (This was denied by James S. Walker, witness for the plaintiff, and there was conflicting evidence concerning the point.) The "umpirage" case was settled for $15,-000.00, which was a good settlement. N. M. Harris, the other attorney in the case, received the money, and, from the whole sum, paid over to Bigham $1,000.00 for his services to all parties. This was a reasonable fee. The payment was before the division of the money. It was made at Atlanta berore reaching LaGrange, and the attorneys separated there. After the $3,000.00 was paid to Grant, trustee, Harris said he had enough to pay the balance due Mrs. Coleman, but was prevented from settling by reason of claims of James S. Walker for amounts due to him as attorney, general manager and on account of some railroad transaction. (Walker denied this.) Bigham denied making the statements attributed to him by the testimony for the plaintiff. He said that there was no dissatisfaction as to him, but Coleman was attempting to get from Walker a plantation on account of that portion of the trust fund which he had gotten from the settlement. He also stated that when he talked to plaintiff's attorney, he knew suit had been brought, and did not care to explain the

matter to him. (This was denied by the attorney, Ferrell.) Grant frequently recognized Bigham as having represented the trust estate, spoke of it in the presence of a number of witnesses, expressing great satisfaction with his services and with the remuneration he received. Coleman also spoke of his representation of the estate. Bigham denied knowing anything about the instructions testified about by Walker.

There was much other conflicting testimony, not material here.

The jury found for the plaintiff $666.67 principal.

Defendant moved for a new trial, on the following among other grounds:

(1.) Because the court overruled the notice to dismiss the declaration on the ground that it showed that the cause of action was barred by the statute of limitations.

(2.) Because the court permitted James S. Walker to testify what was said by Grant, trustee, at the conversation at Bigham's office, at which Bigham, Harris, Grant and the witness were present, and refused to permit Bigham to testify as to the sayings and actions of Grant.—The objection to each of these witnesses was that Grant, trustee, was dead.

(3.) Because the court admitted the exemplification of a record, showing the appointment of Coleman as trustee for his wife.—The objection was that there was merely a general application by Mrs. Coleman to have her husband appointed trustee for her, which was granted by the court and that no trust estate was described, nor was the antenuptial contract, under which it arose, set forth.

(4.) Because the court rejected the original record in the rule filed by Chappell, one of the attorneys contesting for fees in connection with the arbitration case. [The object of this evidence seems to have been to show that Bigham appeared in the litigation concerning fees in 1859 as attorney for the trust estate, as well as for the Walkers. But no ground of objection is stated.]

(5.) Because the court refused to admit the evidence of Whitaker, as a witness to prove that he had obtained from file, by leave of the judge of the court, the original record stated in the fourth ground, and to prove the handwriting on such record to be that of Bigham.—No ground of objection is stated.

(6.) Because the court permitted James S. Walker, while on the stand, to point out and testify as to items in the receipt, and to state that they amounted to $10,005.00 and went to debts owed by himself and N. F. Walker and costs owed in Upson superior court and the Supreme Court.—The objection was that it was allowing parol testimony as to the contents of a record (writing?) and that it appeared that the witness was in Mississippi at the time, and that the evidence as to payments was hearsay. (See testimony of Walker set out above.)

(7.) Because the court rejected an affidavit of illegality written by J. S. Walker, as attorney, and sworn to by W. L. Stirling, in which it was stated that the note on which the judgment was obtained and on which the *fi. fa.* was based " was given to discharge note made by James S. Walker, Freeman Walker, Frances C. Walker, by James S. Walker, agent, and others, which had been sued to judgment in the superior court of Upson county, at the November term, 1858, against James S. Walker."—No ground of objection stated.

(8), (9.) Because the court permitted answers to interrogatories to be read without reading the questions. Defendant's counsel insisted that the questions should be read, that the jury might fully understand the testimony. Plaintiff's counsel replied that they could be commented upon in argument; that his desire was to save time. The court permitted them to be read alone.

(10), (11.) Because the verdict was contrary to law and evidence.

(12.) Because the court charged as follows: " If you believe from the evidence that there was a sum of money

collected for J. S. and N. F. Walker and Mrs. Coleman in the Upson county litigation, and that they were equally interested in said sum, and that, under the instructions of the Walkers, their portion was paid out, then the balance would be funds of Mrs. Coleman; and if you believe that from the funds of Mrs. Coleman $1,000.00 was paid by Harris to Bigham, in payment of his fees due by Walkers, and you believe such fees were due him and he had no notice that the Walkers had received their share, and that the money was paid out of Mrs. Coleman's money—then plaintiff could not recover the assets thus paid out; but if you believe he had notice of these facts, then he would be liable to plaintiff for such sums thus proved."

(13 ) Because the court refused to charge that if it is shown that two attorneys were engaged by parties to recover by suit money, and they do recover for three, and that if there were payments from the fund to other creditors, whose claims were not proper, or legal, or specific charges on such fund, these (if misappropriations at all) were misappropriations for which the lawyer who did not make such outside improper payments, over and above the share of one party, if the evidence shows any overpayments were made, was not responsible. The lawyer who did not pay out improperly would not be responsible, and he would still be entitled to his fee from any part of the fund in discharge of his lien.

(14.) Because the court charged as follows: "Defendants further set up, as a defence to this suit, that if any money came into his hands, as charged, it was a part of a general fund which had been recovered by plaintiffs and two others, and that there had been no division of the same. Well, if this be true, as shown by the evidence, then plaintiff would have a claim only to her *pro rata* part of the one thousand dollars, and in that event, if entitled to recover at all, could only recover the *pro rata* part. But if there was a division of the funds, and plaintiff did not owe defendant a fee, and defendant, without

authority, received any money of plaintiff, then defendant would be liable to plaintiff, if no legal reason be shown why plaintiff could not recover." And failed to charge as follows: "The jury may consider whether or not one or more witnesses in the case testified under bias for or against either of the parties or with interest in the result of the case, either from being party or being attorney, or from being a relation to the party, or from any other cause, and may consider the acts, conduct and declarations of such witnesses in the case, as the evidence shows may have occurred previous to the trial; and the acts, conduct and manner of the witnesses during the present trial."

(15.) Because the court failed to charge as follows: "The jury will be controlled by the sworn evidence, and not by the statements of the counsel, unauthorized by the evidence, or by voluntary statements of counsel made, reflecting on the character of a party in this case."

(16.) Because the court refused to charge as follows: "If a lawyer renders services in a case or cases, even without previous employment, and as the result of his services, a fund is received for the benefit of any parties, the party accepting the fund, or any part thereof, is legally bound to such attorney just as if he, she or they originally employed the attorney, and the attorney has a lien upon such fund against each and all such parties taking the benefit of his services, for hi. fee."

(17.) Because the court refused to charge as follows: "If the jury find from the evidence that the defendant received the money out of the general fund before the same was divided by N. M. Harris between J.·S. Walker,. N. F. Walker and Mrs. Coleman, the parties to whom the money was receipted for, and defendant represented the two Walkers, he, Bigham, was entitled to two-thirds of the money belonging to the Walkers, they being entitled to two-thirds of it."

The court refused to charge as follows. "If they believe Bigham represented Mrs. Coleman by authority of the

v 71-13

trustee, or he ratified the services aftei the services were rendered, and the payment of the other third of the money to him by Harris, and it was a reasonable sum for the services, the defendant had a right to retain it; or if the trustee, within a reasonable time, gave notice to Bigham after he knew he had the money, and claimed it for his services rendered for Mrs. Coleman, the presumption is, he ratified the act of the payment of it to Bigham by Harris, and after the death of the trustee, plaintiff can't allege that Bigham obtained the money by fraud and not for his services in the case, for he, in obtaining the money by Harris" (?)

(18.) Because the court charged as follows: " Defendants further say, that if any money of plaintiff went into his hands, it was a payment for professional services rendered the trust estate of Frances C. Coleman by her trustee, Grant. A trustee has the right to employ counsel to represent the interest when necessary for the trust estate, and to pay for such services from the funds of the estate, and such payment is binding on the *cestui que trust*, and subsequent trustees. If you believe from the evidence that Grant, as trustee of Frances C. Coleman, employed Bigham to represent the estate in the litigation in Upson county, and afterwards ratified the payment of $1,000 to Bigham out of the trust funds of Frances C. Coleman for such services, then such payment was valid and binding, and you should find for the defendant."

(19.) Because the court permitted Walker and Ferrell, witnesses for plaintiff, to state that on a former trial of the case, Strickland, a witness for the defendant, did not testify that Grant, trustee, said that he had consulted with Bigham, and had employed him, which he did testify on the present trial; that on the former trial Strickland had testified that he learned what he then stated from Bigham and Harris, and it was accordingly ruled out; and the court also permitted Ferrell to testify that, on the former trial, Bigham had sworn that Grant was present at the trial of

Bigham *vs.* Coleman, trustee.

the attorneys' rules in 1859, and permitted this evidence to be used for the purpose of impeaching Strickland and Bigham.

(20.) Because of the following matter of practice: Counsel for plaintiff read from interrogatories the statutory questions and answers to impeach one of defendant's witnesses, and then turning from the jury to counsel, announced that he withdrew the testimony, and that no question of impeachment would be made. Defendant's counsel objected to the withdrawal of the testimony after it was read, stating that he was prepared to sustain the witness. The court allowed it to be withdrawn.

(21.) Not certified.

The court overruled the motion, and defendant excepted.

The principal questions in this case, are whether the plaintiff in error represented Mrs. Coleman in the litigation in Upson county, together with her brothers, James S. and Nathaniel F. Walker, Jr., or only represented the latter two, as claimed by her. If he was not her counsel in those suits and received the whole of his compensation out of that portion of the proceeds thereof which was assigned to her, then it is manifest that he has in his hands money to which he is not entitled, and her suit against him for the entire amount was well founded.

She insists further that if the services were rendered to her jointly with her said brothers, then their share of the proceeds was not chargeable with the entire expenses of suits, as was done, and with a knowledge on the part of the plaintiff in error that such was the case ; in short, that he assisted and participated in this misappropriation of her money.

This latter view seems to have been taken by the jury who tried the case, for they gave her only two-thirds of the amount, with interest, that went into the hands of the plaintiff in error.

Both these issues were submitted to the jury under proper instructions from the presiding judge, and, except

the fact that the plaintiff in error received one thousand dollars, about which there was no dispute, there was much conflicting and contradictory evidence as to all the other facts involved in the questions at issue.

The jury could alone determine the credit due to the witnesses of the respective parties, and the proper weight to be attached to their testimony. They seem to have found that the defendant in the original suit (plaintiff in error here), was employed by the plaintiff in connection with her brothers, and that he rendered them all service for which they were equally liable; but they found that he was present when two-thirds of the amount collected was paid out to the debts of the Walkers, and that he aided in that appropriation of the amount, and afterwards with a full knowledge of the facts, received his entire compensation out of plaintiff's portion of the recovery. They also found against the fact that the plaintiff's trustee was satisfied with the payment of the whole of this fee out of her funds, and that he ratified the same; and that a large portion of the debts thus paid by the ten thousand dollars allotted to the Walkers and distributed to them when the money was collected were charges to which plaintiff was equally liable with them.

1. If it is true, as the jury have found, that defendant and his associate counsel collected this money, although the entire amount went into the hands of his associate, and he paid out, with the knowledge and approbation of the defendant, the full amount to which two of the joint parties were entitled, and afterwards paid to the defendant the full amount of his fee for services rendered the three out of the amount assigned to one, this was a diversion of the fund to the extent that the jury have found. It is provided by the Code, §3151, that "all persons aiding and assisting trustees of any character, with a knowledge of their misconduct, in misapplying assets, are directly accountable to the persons injured." That they may be sued jointly with the trustee, or separately, has been

repeatedly held by this court. 14 *Ga.*, 342; 19 *Ib.*, 94; *Ib.*, 130; 61 *Ib.*, 138 and 140, where the authorities are carefully examined and reviewed. 64 *Ib.*, 614. Upon these principles the consent and ratification of the trustee could not avail to discharge the party misappropriating the money from liability to the *cestui que trust.* If he ratified with a full knowledge of the facts, his ratification, so far as respects the rights of the owner, could perhaps have had no other effect than to render him liable with the party misapplying the fund. He could not, in the first instance, have aided in the misapplication without incurring such consequences. Surely he could not, after the misapplication had been made, have confirmed the act without a wilful and deliberate breach of his trust and duty. All the testimony offered, therefore, to establish the confirmation of this misapplication and improper diversion of the plaintiff's money by her trustee, if not irrelovant, was quite immaterial. The court committed no material error in the several charges, refusals to charge, and rulings excepted to upon the foregoing subjects; none, at least, of which the defendant has a right to complain. The charge upon the subject of his employment by the trustee and the ratification by him of the payment of the fee was certainly, to say the least of it, all that the defendant could, in reason, ask, and more than he was entitled to, under our view of the law. The charges excepted to in the 12th and 14th grounds of the motion for a new trial, when read in connection, present the case fully and correctly in both aspects contended for by plaintiff and defendant, and that refused as brought out in the 13th ground of the motion was properly refused, as it had been fully covered by other portions of the charge.

The refusal to charge, as complained of in the 16th ground of the motion, was proper. The case presented no facts which could have authorized the charge requested. While, as an abstract principle, that contained in the request may have been correct, yet it was inapposite to any theory presented by the proofs and pleadings here.

The refusal to charge as complained of in the 17th, and as given in the 18th grounds of the motion, had likewise been disposed of. The one is a mere repetition of the other. All the foregoing relate to the same or kindred subjects.

2. The court did not err in refusing the motion to dismiss plaintiff's declaration, on the ground that it showed that the plaintiff's action was barred by the statute of limitations. The defendant pleaded the statute, and a full and fair charge was delivered to the jury upon the subject. No exception was taken either to the charge or the finding of the jury upon that issue. In this court it was not insisted upon.

3. James S. Walker was no party to this suit, and was a competent witness to testify to a conversation between the plaintiff's trustee, who was dead, and the defendant, concerning the matters involved in this suit; but it does not thence follow that the defendant, who was a party to the suit, was likewise competent to testify as to what passed between him and the trustee in relation to that matter; he is excluded, if not by the words, certainly by the intent of the proviso contained in the evidence act of 1866. Code, §3854, par. 1, 36 *Ga.*, 107; 54 *Ib.*, 174.

4. There was no error in admitting Coleman's appointment as trustee of Frances C. Coleman, his wife. What difference did it make whether he exhibited to the petition for his appointment as such trustee the instrument creating the trust? *Non constat* that the court making the appointment did not inspect it when the appointment was made; the presumption is, as this was its duty, that it did so. This suit was in Coleman's name in that character, and there was no plea denying his right thus to sue. There is nothing in the objection.

5. The original record of the superior court of another county cannot be proved by an attorney who obtained its custody under what purported to be an order of the judge of that court. These papers should have been presented by duly certified copies, under the hand of the

Bigham *vs.* Coleman, trustee.

clerk and the seal of the court. Any one who had inspected the original paper could have proved, as the witness offered in this instance, that the original was in defendant's handwriting; though this was unnecessary, as the exemplification would have shown that he signed it as counsel, and there was no dispute as to his appearance and participation in the conduct of the suit.

6. There was no error in permitting the witness, Walker, to explain the items of the receipt in evidence, or to cast up the various amounts and testify to the sum total, for which it was given. It is a mistake to suppose that such a paper was "a record" that could not be explained or denied by parol testimony. Code, §3807. Neither did the witness profess to be present when the money realized from the Upson litigation was paid out. What he testified to on this subject, he got, according to his version, from the defendant and others in connection with him, after his return from Mississippi.

7. It is not evident for what purpose the affidavit of illegality drawn by James S. Walker, and sworn to by Stirling was offered. If it was to charge Mrs. Coleman as a joint maker of the note, the foundation of the *fi. fa.*, and to show the relation she bore to that paper, it was clearly incompetent. As to her it was *res enter alios acta* and hearsay. If it was offered to impeach Walker, it could hardly be considered as having that effect, inasmuch as it was sworn to by Stirling, and must have been drawn by Walker as his attorney from his instructions, and this was some time after the transactions in which the money was paid out, arising from the Upson county litigation.

8. If answers are intelligible without the interrogatories, there is no necessity for reading the latter; it would be only an unnecessary consumption of time; and according to our understanding of the matter, it is customary to dispense with their reading. The record discloses the fact that the defendant objected to this; but thinking it would save time, the court permitted it to be done, reserving de-

fendant's right to refer to them in argument and read them to the jury. It does not appear that he availed himself of this privilege, or that he was in any manner injured by the course pursued. This is matter of practice, and is properly entrusted to the discretion of the presiding judge. If error it be, we would hardly be justified in reversing a judgment for it, and ordering a new trial.

9. The court, in its general charge, stated to the jury that they should make up their verdict from the evidence, and gave them particularly the rules for judging of its credibility and weight. After this was done, we do not perceive the necessity of giving them in charge the request embodied in the 15th ground of the motion for a new trial, to the effect that they should be controlled by the sworn evidence, and not by the unauthorized statements of counsel, voluntarily made, reflecting on the character of a party to the cause. It would certainly have been going a great way, without plain and manifest evidence of the fact, for the court to have disparaged the efforts of counsel engaged in a cause by attributing to him gratuitous and false attacks upon the character of the opposing party. In this case facts of a damaging and scurrilous nature to that effect were set forth in another ground of this motion, which the presiding judge refused to verify.

10. There was no error in allowing testimony to show that one of the defendant's witnesses failed on a former trial of this case to prove material facts to which he swore on this trial, or in permitting a witness to testify to what the defendant swore on the same trial. That a witness may be impeached by showing that he has sworn differently about the same matters at different times, is common practice,—indeed it is one of the modes of impeachment recognized by the law. It shows, if nothing more, the frailty and unreliable character of his memory. It does not necessarily impute moral turpitude or wilful falsehood.

11. It may have been somewhat unusual in counsel to read testimony to the jury tending to impeach a wit-

ness introduced by his adversary, and then to withdraw the testimony and announce that he would not insist upon impeaching the witness, but would abandon the purpose. The question is not whether this was exceptional practice, but whether he had a right to do so. Most certainly the party introducing the witness had no right to insist that the effort to impeach him should be persisted in, that he might have an opportunity of sustaining him. The abandonment of the attempt was as complete a vindication as the sustaining testimony could have been. A failure to establish a point, and an acknowledgment that the attempt was futile, is more hurtful to the assailing party than to the one who is assailed. It does not appear from the record that the attempt was not, in good faith, abandoned, or that any subsequent allusion was made to the subject. If it had been done, it would doubtless have met with prompt reproof from the presiding judge, accompanied with an admonition to the jury to disregard it.

Judgment affirmed.