BLOUNT *vs.* BOWNE.

1. One who is hired at a fixed compensation to become security on a bond given to procure the release of goods under seizure by a court of equity, is entitled to the stipulated compensation, if his liability attaches upon the bond and the goods are released, although they may be immediately afterwards seized under other process and detained indefinitely, or until again released by compromise of the whole litigation, as well that pending when the bond was given as that afterwards commenced.

2. The charge of the court upon every material point was correct, or if not strictly so, the verdict being right, there is no cause for a new trial.

3. Although parol evidence touching a bond and its acceptance and approval by the court may be subject to objection, yet the objection that the bond itself is the highest evidence, is not sustainable, because the instrument being an office paper of the court, a certified copy or an exemplification of it, is the primary evidence. Had this been called for instead of the bond, the court might have required its production, but even then, as the action was not upon the instrument, the bond being only collaterally in question, it is possible that the parol evidence received was competent.

March 18, 1889.

Contracts. Bonds. Consideration. Charge of court. Verdict. Evidence. Before Judge BOWER. Decatur superior court. May term, 1888.

Bowne sued Blount for $400 and interest, which he alleged to be due him because of a promise which Blount had made to pay him five per cent. on $8,000 for going

on a certain bond of Blount's to enable Blount to gain possession of a stock of tobacco, etc. held by the receiver of Gillett Bros., and claimed by Blount.   Blount pleaded the general issue, and that the contract sued upon was *nudum pactum.*

The testimony of Bowne tended to show the following facts: A large stock of tobacco, cigars, etc., which Blount claimed to have purchased from Gillett Bros., and which were worth from $8,000 to $10,000, had been seized and taken possession of by Angier, as receiver for Gillett Bros.  Blount desired to get possession of this stock, and finding it necessary to give a bond in order to do so, applied to Bowne to become his surety ; Bowne agreed to do so upon Blount's promise to pay Bowne five per cent. of the value of the goods therefor, which value Blount stated at the time to be more than $8,000.   In consideration of this promise, Bowne went before the judge of the superior court and testified that he was worth $10,000, became the surety of Blount, and by reason thereof, the stock was released and was turned over to Blount, and was afterwards sold by Blount. Bowne went with Blount to the warehouse, where the tobacco, etc. was stored, and authorized the warehouseman to turn the tobacco over to Blount, which he did. Bowne made no promise to take charge of the sale of the stock, but Blount said he would sell it himself. The insurance receipt (put in evidence by plaintiff) was made to Bowne because, at that time, which was immediately after the signing of the bond, Bowne had the tobacco in his care; the insurance premium was paid by Blount.   If any attachment was levied upon the stock after the giving of this bond, Blount gave Bowne no notice of it and never called on Bowne for another bond to relieve said stock.   The insurance receipt referred to was dated May 7th, 1883, and was made to

Bowne for insurance premium " on $8,400 of tobacco, snuff and cigars, policy dated from to-day."

Plaintiff introduced a letter written him by Blount, dated July 19th, 1883, in which was stated, among other things, that Bowne should not be the loser but should be paid liberally for his trouble with regard to the tobacco, and that Blount would come to Atlanta soon and close out the tobacco.

The testimony of Dorsey and Angier, referred to in the motion for a new trial, was to the effect that Blount gave a bond for the purpose of enabling him to get possession of the stock; and that there were several sureties on this bond, of whom Bowne was one. Dorsey testified that he was quite sure that the signature of Bowne to the bond resulted in its acceptance by the court. Both witnesses testified that they understood that Blount was to pay Bowne for going on the bond, and that Blount got the goods by virtue of the bond; though Dorsey stated that he was not sure whether they were delivered to Blount before or after the case was compromised. They also testified that they did not have the original bond or certified copy of it, but Angier testified that he had had it, and that the papers in the litigation had been badly scattered. The testimony of Ponder, also referred to in the motion for new trial, was to the effect that plaintiff was on Blount's bond for five per cent. of the value of the goods, which value Blount assured him was $10,000; that there was something said about Bowne's taking charge of the goods, but the witness understood this was only to make Bowne safe as a bondsman, and there was no agreement that Bowne was to sell the goods; and that witness was present when the terms were agreed upon, but was not present when the bond was signed.

The evidence for the defendant tended to show as

follows: The agreement between him and plaintiff was, that if plaintiff should go on the bond and would take charge of the goods and sell them, defendant would give him five per cent. of the amount realized from the goods. Bowne did sign the bond, but in an hour and a half or two hours after he signed it, and before Blount had really got possession of the goods or removed them from the warehouse, they were levied on by other claims against Gillett Bros., and Blount had to pay $2,250 to get them finally released; and in this way the bond was of no benefit to Blount, and the liability of Bowne lasted only for the time mentioned. It was about a month afterwards that the goods were sold by Blount. Blount did not call on Bowne to sell goods for him, as he did not consider Bowne liable for them. It was part of the understanding that the goods were to be insured for Bowne's benefit, and Blount paid the insurance premium, thinking that he (Blount) was going to get possession of the goods, the receipt being made to Bowne because Blount had told Bowne that the goods should be turned over to the latter. Blount's explanation of the letter was, that when he wrote it he thought he was going to get possession of the goods.

Blount introduced an order signed by the judge of the superior court of the Atlanta circuit, dated May 31st, 1883, to the effect that the receiver and Blount had, after a conference with all parties in interest, agreed upon a compromise of the litigation in the matter of Gillett Bros., Blount being a party defendant to the bill, by which compromise Blount was to pay the receiver $2,200, and was to receive the stock of tobacco, etc., free from claim on part of Gillett Bros.; that said compromise was approved; and that when Blount paid said sum, the bond given by him for the goods should be null and void. Blount also introduced an order

given to him by the receiver, dated June 9th, 1883, directed to the warehouseman who had the stock on storage, and ordering him to deliver to Blount said stock, stating that all claims of the receiver or of R. J. Reynolds or of McGhee & Hart had been settled ; this paper was also signed by the attorneys of Reynolds and of McGhee & Hart. Also receipts from said last named attorneys, dated June 9th, 1883, for certain sums of money, in which they agreed to relinquish all claims on the tobacco and to dismiss their actions of trover.

The jury found for plaintiff $400, with interest from June 9th, 1883. The defendant moved for a new trial on the following grounds :

(1) Verdict contrary to law and evidence.

(2) Error in admitting the testimony of Bowne, Dorsey, Angier and Ponder in reference to the bond, as well as to the acceptance and approval by the court, without producing the bond; the bond, its acceptance and approval being the highest evidence. (What objection was made to this evidence is not otherwise stated in the motion.)

(3) Error in charging: If the contract was, that Blount was to pay plaintiff $400 to go on the bond to enable defendant to get possession of the goods, and if the bond was used in court, delivered in court and stood in place of the property, and if the property was turned over by the plaintiff, or any one else, to Blount in consequence or by reason of the bond being used for the purpose, Bowne's liability on the bond would then become fixed, and the verdict should be for the plaintiff.

(4) Error in charging: Or if Bowne incurred liability, though Blount never got any benefit from it, you should find for plaintiff, because, if the bond was used so as to make Bowne liable, even though he may have been liable only for a short while, or may have been re-

lieved by some order of the court afterwards, even the fact of Bowne's liability on the bond for one instant by the goods being turned over, by reason of the bond being given, or by the goods being put at the disposal of Blount and Bowne, or by reason of the goods being released from the receiver where Blount and Bowne could have taken possession of them, in either event Bowne's liability would be fixed, and Blount would be liable to Bowne for what he promised to pay him for going on the bond.

(5) Error in charging: If plaintiff, in good faith, signed the bond and the bond was used as I have just stated, although Bowne's liability existed for an instant only, Blount would be bound to the plaintiff for the contract.

(6) Error in charging: If he got the goods, even for an instant, or could have got them, by reason of the bond being given, the goods were released from the receiver so he could get them if he wanted to, then plaintiff would have been liable.

(7) Error in refusing to charge: If Blount got possession of the goods under the order of the court, and not by virtue of the bond, but got them under a process of the court, then Blount would not be liable to Bowne.

The motion was overruled, and defendant excepted.

DONALSON & HAWES, for plaintiff in error.

D. A. RUSSELL, contra.

BLECKLEY, Chief Justice.

1. The scene of this action was Decatur superior court; the scene of the cause of action was Fulton superior court. The latter, as a court of equity, had possession,

by its receiver, of certain goods, consisting of tobacco, snuff and cigars, valued at from eight to ten thousand dollars, which had been seized at the suit of Walter *et al.* against Gillett Brothers. Of these goods Blount desired to obtain possession; to do which it became necessary for him to execute a bond with sureties. He employed Bowne to become one of the sureties, which he did; and for the agreed compensation this action was brought. Upon the trial the parties differed upon two questions of fact; (1) as to the terms of the contract, and (2) as to whether a full execution of it had been realized. There was no difference as to the amount of compensation, but Blount contended that the terms of the contract embraced not only the execution of the. bond, but a sale of the goods which was subsequently to be made by Bowne; whereas Bowne contended (and such was the overwhelming weight of the evidence) that the compensation was solely for executing the bond, and that he assumed no duty or obligation whatever touching the selling of the goods. The chief pressure of the case was upon the question whether Blount obtained the possess'on of the goods on the bond which Bowne and others executed with him, or whether that bond proved fruitless, so as not to subserve the purpose which both parties had in contemplation. Bowne and the receiver both testified that Blount did obtain possession under the bond. One of the attorneys concerned in the transaction testified that such was also his recollection. Blount alone testified to the contrary, and even he admitted that after the bond was accepted he insured the goods in the name of Bowne, and that Bowne " was not liable for the goods more than about an hour." This implies that he was liable for them during that length of time. How liable for them? Upon the bond, of course, for there is no pretence or suggestion that he

became liable for them in any other way. The explanation is, that after the receiver's custody ceased and Blount's commenced, the goods were seized under fresh process at the instance of a new plaintiff or claimant. This is apparent from the evidence. It was this fresh seizure which caused the subsequent detention of the goods, and led to the compromise by which Blount not only got possession a second time, but obtained a final release both for herself and his sureties upon the bond. The seizure was not the fault of Bowne, but the misfortune of Blount. Bowne did all he undertook to do, and thus became entitled to the agreed compensation. The letter of Blount, written after the whole business was concluded, is a manifest recognition of Bowne's right to be compensated, and the only measure of compensation of which the evidence affords any glimpse is that fixed by the contract. Considering the date of this letter, the explanation which Blount attempts to give of it is too feeble to bear criticism. The evidence warranted the verdict.

2. The charge of the court and the refusal to charge (taken in the light of the whole charge as given) complained of in the motion for a new trial, we consider free from substantial error. At all events, as the verdict is correct, there is no cause for reversal.

3. The ground of objection taken to the admission of certain evidence as to the bond and its acceptance and approval by the superior court of Fulton, namely, that the bond itself with its acceptance and approval would be the highest evidence, is not sustainable. The bond became an office paper of the court which accepted and approved it, and a certified copy or exemplification of such a document, and not the document itself, is declared by the code to be the primary evidence. Code, §§3816, 3817. Had this ground of objection been pre-

sented to the parol evidence instead of the one which was presented, possibly it should have been, and perhaps it would have been, sustained. But even then, as the action was not upon the bond, but the instrument was only collaterally in question, it is not certain that an exemplification would have been necessary. 1 Taylor's Ev. §405 to §408; 1 Gr. Ev. §89. However this may be, the objection on which the court adjudicated was correctly decided. Our review of the question ought to be and is confined to that objection. Thomp. on Trials, §693.

Judgment affirmed.