## GIBBS *v.* THE STATE.

1. The statement of one jointly indicted with the plaintiff in error, tending to show participation by the latter in the crime with which they were charged, was not made under such circumstances as to render it a part of the res gestæ of the transaction, and should have been excluded upon objection properly made.

2. Nor was it admissible as the declaration of an accomplice against a joint conspirator who was being tried separately, as it was made after the joint enterprise had terminated, and not under circumstances bringing it within any of the exceptions to the rule excluding hearsay evidence.

OCTOBER 12, 1915.

Indictment for murder. Before Judge Charlton. Chatham superior court. May 25, 1915.

*Shelby Myrick,* for plaintiff in error.

*Clifford Walker, attorney-general, Walter C. Hartridge, solicitor-general,* and *Mark Bolding,* contra.

BECK, J. Will Jackson and Marcus Gibbs were jointly indicted for the murder of D. Manigo. It is charged in the indictment that the accused feloniously killed the decedent by cutting him with a knife. Gibbs was put upon trial, and a verdict of guilty was returned. A motion for a new trial was overruled, and he excepted. The motion complains of a ruling of the court which permitted a witness for the State to testify, over objections duly made: "Willie [Jackson] said, 'There is no use of any questions. I can tell you who was it. It was my nephew, Marcus Gibbs.'" We think the objection that this testimony was hearsay and incompetent was good and valid, and that its admission was error. From other testimony in the case we gather that the decedent, at the time the fatal wounds were inflicted upon him by cutting and stabbing, was in his

store. It appears from the evidence submitted by the State that certain persons hearing a struggle in the store went immediately to it, and when the door was opened, or partially opened, two men were seen attacking the decedent. According to the testimony of one witness, who is supported by other evidence, they were cutting his throat; and it was in the testimony that Jackson was the man who was actually doing the cutting. The witness for the State who testified circumstantially to the facts set forth above was one Joseph Johnson. After testifying as above set forth, the witness further stated that one Solomon Gibbons ran up and told him to open the door. The assailants of Manigo then "ran for the back" of the building. Jackson went behind a counter, and as he arose with a knife in his hand Solomon Gibbons (who had come up after the witness Johnson arrived on the scene), being armed with a gun, shot and wounded Jackson; so that he dropped the knife. The other assailant of Manigo ran to the back of the store, which was the only place from which he could make his exit; and there (as is inferable from the evidence) escaped by a window. Thomas Gibbons had also come up to the scene, and the witness told him not to shoot, saying that there was another man in the room. After the witness told Thomas Gibbons not to shoot, Willie Jackson said that he was coming out, and that Solomon Gibbons had already shot whatever he had in his hand out of it. Jackson then came from behind the counter and sat down; and while Thomas Gibbons kept his gun pointed at Jackson the witness started to the house of one Dotson and met him at his store, fifty or sixty feet from Manigo's store. Dotson had heard the noise and was going towards Manigo's store. When the witness and Dotson reached the door of Manigo's store, Jackson came out and sat on the steps. About a dozen others had gathered there. They had come from all around. Continuing from this point, the witness added: "I said to them not to go in there; there is another man in the store. I was speaking to the men there, and some one said the window was open and he had escaped. Willie [meaning Jackson, the person who was jointly accused with the plaintiff in error] said: 'There is no use to ask any questions. I can tell you who it was. It was my nephew, Marcus Gibbs.'" This saying of Jackson was objected to, as already stated. While it may be true that only a few minutes had elapsed from the time of the assault on Manigo to the time of making the

statement just quoted as coming from the mouth of Jackson, we do not think that the statement was admissible as a part of the res gestæ. Whether the period of time between the occurrence to which the statement related and the making of the statement itself was very brief or not, several events had taken place after the crime had been committed; witnesses had come upon the scene; Jackson, whose statement it was proposed to put in evidence as a part of the res gestæ, had been shot in the hand or arm; he had taken a seat in a described place; he had then left that and come down to the steps of the store. A dozen persons had gathered from all around. The question as to the identity of the person other than Jackson engaged in the assault was being discussed in his presence. He heard the questions as to who the other party might be, and his statement was more in the nature of an answer to the questions, and narrative in character, than it was a spontaneous declaration and one fairly to be treated as practically contemporaneous with the occurrence to which it referred. In the case of *Hall* v. *State,* 48 *Ga.* 607, it was said: "The res gestæ of a transaction is what is done during the progress of it, or so nearly upon the actual occurrence as fairly to be treated as contemporaneous with it. No precise point of time can be fixed. a priori where the res gestæ ends. Each case turns on its own circumstances. Indeed, the inquiry is rather into events than into the precise time which has elapsed. Is the proof offered of a matter fairly a part of the same transaction? Is it an event happening naturally and spontaneously as a part of the occurrence under investigation? If so, the law permits it to be proven as part of it, since the whole scene, as it has transpired, ought to appear to the tribunal called upon to determine its character. Matters occurring before or after, that is, before the transaction begun or after it ended, are not part of it. To make them such, they must be so nearly connected with the actual occurrence as to be without the suspicion of afterthought or forethought: Rev. Code, section 3720. They must be within the shadow, as it were, of the transaction itself. Is that so in this case? The quarrel was over, some minutes had elapsed, the parties had separated. The prisoner had been arrested. He had waited at the cloak-room for his overcoat, in charge of the officer; that had been obtained, and the officer and he had gone some one hundred and fifty yards, towards the guard-house. The occurrence was over—completely

over. New events had occurred, and what the prisoner said can by no fair inference be made a part of the event in which this shooting occurred. It is not so closely connected with the event as to be free from all suspicion of afterthought or device." Numerous cases from our own reports announcing or illustrating the principle here laid down could be cited, but it is not necessary to do so. The judge below, in a written opinion in the case, expressed his doubts as to whether the statement discussed above was a part of the res gestæ, but was of the opinion that it was admissible as the declaration of an accomplice. But we think, if the statement was not a part of the res gestæ, that it was not admissible as the declaration of an accomplice. If there be in the case, independently of this saying of Jackson, sufficient evidence to authorize the jury to find that there was a conspiracy between Jackson and Gibbs to commit the homicide, nevertheless the homicide, the subject of such conspiracy, had been accomplished and the enterprise was ended, and the statement or confession by one joint offender or conspirator, made after the enterprise was ended, was not admissible as against another joint conspirator (Penal Code, § 1035), unless such statement or confession fell within some other one of the exceptions to the rule excluding hearsay evidence, which does not appear to be the case here.

What we have said above is applicable to the other ground of the motion complaining of the admission of testimony.

*Judgment reversed. All the Justices concur.*