## PRESSLEY *v.* THE STATE.

No. 16578. APRIL 12, 1949.

202

*Leon A. Wilson II, Herbert W. Wilson,* and *Harry M. Wilson,* for plaintiff in error.

*Eugene Cook, Attorney-General, J. R. Walker, Solicitor-General,* and *J. R. Parham, Assistant Attorney-General,* contra.

DUCKWORTH, Chief Justice. (After stating the foregoing facts.) ■ If the evidence in this record is sufficient to authorize a jury to find that the defendant and John Howard Long entered into a conspiracy to commit the crime charged in the indictment, and that this criminal enterprise had not terminated when Long made the declarations concerning the crime, then such statements are evidence against the defendant, and the court did not err as contended in the first five grounds of the amended motion for new trial. Since all of these special grounds complain because the witness McLemore was allowed to repeat declarations made by Long, and the record shows that another witness, Sheriff Johnson, was allowed to testify to the same facts without objection, these five special grounds could be prop-

erly and legally decided adversely to the movant for this reason alone. *Lewis* v. *State,* 196 *Ga.* 755(1) (27 S. E. 2d, 659). But since under our ruling in division 3 of this opinion a new trial must be had, and upon that trial the question of a conspiracy and the admissibility of the declarations of Long will be again presented to the trial court, we deem it advisable to now rule upon these questions, since they are raised in these grounds. A conspiracy is prima facie shown by evidence to the effect that the joint defendants were near the place where the skeleton was found at the time which Pressley admits was the night before the killing, and that they were in destitute circumstances and begging for food. The defendant's statement shows the disappearance of Edwards under the command of Long, who held a pistol on him, and that the defendant made no protest or objection and made no inquiry as to what Long intended to do or as to what Long wished the defendant to do; but with apparent contentment he remained in the automobile that he knew belonged to the person who had been carried out of his presence, and exercised dominion over that automobile by turning it around, perhaps making ready for their escape, and waited for Long to return. When Long returned Pressley inquired if he had killed Edwards. The jury could well conclude from their experience as human beings that the action and reactions of Pressley under these circumstances indicated that he was fully acquainted with what was intended and what was taking place and was executing his part of the plan in getting the car ready to go, their taking the money and automobile of the deceased and leaving with it together without, in so far as Pressley has seen fit to explain, having to make any plan or agreement to do so upon Long's return from the woods. These circumstances point definitely to the existence of a previous plan and agreement made by Long and this defendant. It was not necessary to prove an express pre-existing agreement between the coconspirators. *Davis* v. *State,* 114 *Ga.* 104, 107 (39 S. E. 906); *Mills* v. *State,* 193 *Ga.* 139 (17 S. E. 2d, 719); *Nobles* v. *Webb,* 197 *Ga.* 242 (29 S. E. 2d, 158); *Patterson* v. *State,* 199 *Ga.* 773 (35 S. E. 2d, 504). After the conspiracy has been thus established, declarations by either of the conspirators during the pendency of the criminal enterprise are admissible against both. Code, § 38-306. But declara-

tions made after the criminal enterprise has ended are admissible only against the one making them. Code § 38-414; *Reid* v. *State*, 20 *Ga.* 681; *Gibbs* v. *State*, 144 *Ga.* 166 (86 S. E. 543); *Wall* v. *State*, 153 *Ga.* 309 (112 S. E. 142); *Lance* v. *State*, 166 *Ga.* 15 (142 S. E. 105). It is necessary, therefore, to determine if the criminal enterprise here had ended when Long made the declarations, since the criminal acts of killing and robbing had unquestionably terminated. A conspiracy may extend beyond the criminal offense charged. Sayings or conduct in a concealment of a wrongful act, as well as sayings and conduct in its perpetration or execution are admissible against all the conspirators. *Byrd* v. *State*, 68 *Ga.* 661; *Carter* v. *State*, 106 *Ga.* 372 (32 S. E. 345); *Burns* v. *State*, 191 *Ga.* 60 (11 S. E. 2d, 350). The jury was authorized to find from this evidence that there existed a conspiracy to conceal at the time Long made the declarations testified to by the witness McLemore. The conduct of the defendant is very significant at this point. According to his own admission, he not only counseled and advised Long to mislead the officers and prevent them from finding the body, but he advised him of the reason for doing so, that reason being that, if the body could not be found, they could not be prosecuted. Of equal significance is the statement of the defendant when he learned that Long had led the officers to a discovery of the body. He cursed Long and accused him of "ratting" on him. The quoted word means that Long had deserted him. As applied to the subject-matter with which they were dealing, it meant that Long had violated their agreement to conceal their crime. From the standpoint of Long the jury might well have found that he did, in making his declarations, so endeavor to mislead and to conceal. Certainly his placing the full blame upon Pressley would tend to conceal the existence of a criminal conspiracy. From what has been said it follows that the evidence was sufficient to authorize the jury to find that the joint defendants had entered into a conspiracy to commit the crime charged in the indictment, and that this criminal enterprise had not ended at the time the declarations by Long were made, and, hence, proof of these declarations as evidence against the defendant Pressley was not erroneous. For the reasons herein stated these special grounds are without merit.

■ The corpus delicti must be proved in all murder cases. It

includes (1) death, and (2) the criminal agency causing the death. *Warren* v. *State,* 153 *Ga.* 354 (112 S. E. 283); *Shedd* v. *State,* 178 *Ga.* 653 (173 S. E. 847). In the present case, in addition to the proven declarations of the coconspirator Long, the defendant Pressley made voluntary admissions which tend to connect him with the crime. Furthermore, Long led the officers to the place where both the coconspirators admit that they left William Edmond Edwards and took his car, and there a human skeleton was discovered. The testimony of Dr. Penland that a hole in the skull back of the left ear would have produced death, and that it would have been difficult to have pressed the very piece of bone out of the skull, all combined, was sufficient to prove the corpus delicti. The evidence was sufficient to authorize the verdict, and the general grounds of the motion are without merit. Also, special grounds 8 and 9 are without merit.

■ Special ground 6 complains of the ruling which allowed a witness for the State to identify a certain document as being the original Naval health record of William Edmond Edwards. This record was not offered in evidence, and the solicitor-general stated at the time that he had no intention of offering the same in evidence. Therefore, the exception would not require us to rule as to whether or not the record as identified was admissible. While it is true that, where a document is admitted upon the trial to be the original record, it is not error to admit it in evidence over the objection that a duly certified copy of such record is the legal way to prove the same (*Rogers* v. *Tillman,* 72 *Ga.* 479; *Cramer* v. *Truitt,* 113 *Ga.* 967, 969, 39 S. E. 459; *Myers* v. *Wright,* 158 *Ga.* 418 (3), 123 S. E. 740; *Bitting* v. *State,* 165 *Ga.* 55 (7), 139 S. E. 877), yet, in the absence of such admission in open court that the document is the original public record, such public record can be proved only by a duly certified copy thereof. *Bigham* v. *Coleman,* 71 *Ga.* 176 (5); *Bowden* v. *Taylor,* 81 *Ga.* 199 (3) (6 S. E. 277); *Blount* v. *Bowne,* 82 *Ga.* 346 (3) (9 S. E. 164); *Ellis* v. *Mills,* 99 *Ga.* 490 (2) (27 S. E. 740); *Belt* v. *State,* 103 *Ga.* 12, 16 (29 S. E. 451). It follows that the original record referred to would not have been admissible upon the testimony complained of and that the court erred in overruling the objection.

Ground 7 complains because a Naval officer, who was a dentist,

was allowed to testify as to the existence of a health record showing the condition of the teeth of William Edmond Edwards, and who by comparing the jawbone, which the State had introduced in evidence, with the chart on that record, testified that the jawbone was that of William Edmond Edwards. While the ground of objection is not as clear and explicit as it might have been, it is sufficient to show clearly the basis of the defendant's complaint; the substance being that the witness should not have been permitted to testify what the record showed, but should have been confined to testimony concerning his own knowledge. The complaint here is also well founded. The testimony objected to was inadmissible for the reason that it offended the best evidence rule (Code, § 38-203), which requires that proof be made by the highest and best evidence or that its absence be accounted for. This rule would require that a properly authenticated copy of the health record referred to be introduced as proof of what that record shows. Written evidence is higher evidence than oral testimony. Code, § 38-205. A verified copy of an original writing produced by a witness is better evidence than an oral declaration as to what it contains. *Mobley* v. *Breed,* 48 *Ga.* 44. Had the record been proved and put in evidence, then the testimony of the dentist would have been proper. As an expert he could have compared the jawbone and teeth with the record in evidence, and from the two could have drawn the conclusion which he made; but since the record was not only not offered in evidence but would not have been admissible upon the mere testimony of the witness that the health record was the original, the testimony of this witness, giving his conclusion, which was in part based upon that record, was prejudicial and clearly inadmissible. For the reasons stated in this division of the opinion, the court erred in overruling the amended motion for new trial.

*Judgment reversed. All the Justices concur, except Atkinson, P. J., who concurs in the judgment only; and Head, J., who dissents from the rulings in headnotes one and two and the corresponding divisions of the opinion, but concurs in the judgment of reversal.*

HEAD, Justice, dissenting. My disagreement with the majority opinion is not with the rule stated in subdivision (a) of division one. The rule is correctly stated. The evidence upon which

the majority opinion must rest to support the application of the rule is insufficient under any decision of this court.

Conspiracy to commit a crime is not necessarily proved by declarations of the conspirators prior to or during the pendency of the criminal enterprise. Such a conspiracy may be established by facts and circumstances of such a nature as to lead an honest and impartial jury to the conclusion that a conspiracy in fact did exist. The evidence (independent of statements made by the alleged coconspirators many months after the commission of the alleged crime, and after their arrest, and while incarcerated) fails to establish prima facie the fact of a conspiracy. The State's evidence shows that Pressley and Long were at a specified place, and that they requested food and a place to spend the night. The testimony of the witness concerning these facts is insufficient to authorize an inference that a crime was about to be committed. The majority opinion couples the fact related with an alleged statement of Pressley while incarcerated in Macon, Georgia (wherein he communicated a request to Long not to reveal the location of the body, and when Long disregarded this request and took the officers to a point where a skeleton was found, Pressley cursed Long and accused him of "ratting" on him), together with incriminating statements by Long, to show a criminal conspiracy. If, as stated in the majority opinion, Long's incriminating statements were of such a nature as to authorize the jury to find that he was attempting to conceal his guilty participation in the crime, this would not authorize an inference that there was a conspiracy still existing to conceal it, since the fact of the crime had been revealed by Long.

I am not unmindful that this court has held that the criminal enterprise continues so long as the coconspirators conceal the crime. The soundness of such decisions might be debated at length, but if such is the correct rule, would not the statutes of limitation (where such statutes would otherwise apply) be suspended, where there might be evidence of a conspiracy to commit a crime, until such time as the conspirators confess their guilt? See Krulewitch v. United States, No. 143, October Term, 1948, decided March 28, 1949, by the Supreme Court of the United States.

Declarations "during the pendency of the criminal project"

(Code, § 38-306) have been held to relate to the crime charged. See *Howard* v. *State,* 109 *Ga.* 137, 140 (34 S. E. 330); *Wall* v. *State,* 153 *Ga.* 309, 316 (112 S. E. 142); *Tanner* v. *State,* 161 *Ga.* 193, 197 (130 S. E. 64); *Lance* v. *State,* 166 *Ga.* 19, 20 (142 S. E. 105). I am of the opinion that these decisions state a correct rule. While the majority opinion relies on that line of authorities (some of which are cited in the majority opinion) which extends the conspiracy so long as the crime is concealed, I am driven to the conclusion that the evidence in this case does not support the opinion, since it clearly appears from the evidence that Long made at least two statements in Georgia after his arrest, one in Macon and one in Waycross, that the statements so made are in every material respect the same, that Long revealed, while incarcerated at Macon, the location where (he said) Pressley had committed the crime charged. In view of the fact that Long led the officers to the location of a skeleton, and Pressley cursed him for "ratting" on him, I fail to see wherein the conclusion is authorized that there was a conspiracy to conceal the crime at the time Pressley charged Long with "ratting." If there had been a conspiracy to conceal the crime (which in my view is not shown by the record), it was terminated when Long took the officers to the spot where he said the crime was committed by Pressley, and where a skeleton was found.

Whether or not the evidence complained of might have been admissible under some other rule of law, is not material to the issue here. The court's opinion is limited to the ruling that it was admissible under the rules applicable to a conspiracy. Firmly convinced, as I am, that the evidence was inadmissible under the Code, §§ 38-306, 38-414, I must dissent from the ruling made. As was said by Mr. Justice Jackson in his concurring opinion in Krulewitch *v.* United States, supra, "there is, of course, strong temptation to relax rigid standards when it seems the only way to sustain convictions of evildoers." The relaxation of rules of law and evidence in order that an accused may be required to account for brutal or heinous crimes may lead to chaos in the judiciary, and result, in "the most odious of all oppressions," those which "mask as justice."

The majority having ruled (in which ruling I concur) that the dental chart of the deceased could be established only by an

authenticated copy, the evidence of the Naval officers based on information contained in the chart was, therefore, improperly admitted. With this improper evidence excluded, the evidence is insufficient to establish the corpus delicti. It is true that a skeleton was found at the point indicated by the statements of Long as the place where a crime had been committed. There was no identification of the skeleton other than by the testimony of a brother of the alleged deceased that a belt buckle found at or near the skeleton was "similar to the one worn by my brother the last time I saw him." While such testimony might be a circumstance for consideration of the jury, it was insufficient to identify the skeleton found as that of the alleged deceased, and the corpus delicti was not established by evidence independent of the incriminating statements of the alleged co-conspirator.