## LANCE *v.* THE STATE.

1. The court erred in admitting the testimony complained of in the 6th and 7th grounds of the motion for new trial. This evidence tended to prove acts upon the part of the alleged joint conspirators to commit the crime with which this defendant was charged, occurring after the purpose of the conspiracy had been accomplished and the conspiracy had ended.

2. Under the ruling just stated, the court erred in admitting evidence similar to that already held to be objectionable, which related to acts or tended to prove acts of the alleged joint conspirators after the conclusion of the enterprise which formed the object of the conspiracy. This covers the assignments of error in grounds 8, 9, and 10 of the motion for new trial.

3. The court did not err in allowing a witness for the State to testify, over objection that the testimony was irrelevant, as follows: "That he had seen Jack Lance, Whitey Jones, Smitty Batchelor, Abe Nissenbaum, alias Sparkplug, and a man named George O. Young in company with this defendant, Jack Lance, very often prior to the murder of Bert

Criminal Law, 16 C. J. p. 651, n. 36; p. 653, n. 65; p. 657, n. 12; p. 661, n. 57; p. 1147, n. 64; 17 C. J. p. 203, n. 87.

Homicide, 30 C. J. p. 162, n. 76; p. 180, n. 43; p. 193, n. 53; p. 199, n. 29; p. 200, n. 39.

Witnesses, 40 Cyc. p. 2787, n. 38; p. 2789, n. 41.

Donaldson; that he had seen them together around the Henry Grady Hotel pretty often, and up and down the streets." All the persons named in this testimony, except one, were jointly indicted with Lance for the murder of Donaldson.

4. Evidence to show that a woman by the name of Yvonne Jones occupied a room at the Henry Grady Hotel during the time when this defendant was occupying a room at the same hotel, just prior to the alleged murder of Bert Donaldson, was not objectionable on the ground that it was irrelevant, in view of other evidence in the case.

5. In view of other evidence, the testimony as to a woman, with whom the jury might have found that Lance was closely associated about the time of the commission of the crime with which he was charged, took a room at the same hotel at which Lance was stopping the night before the murder, was admissible and not open to the objection that it was irrelevant and immaterial.

6. The court did not err in admitting the evidence objected to upon the ground that it was irrelevant, which appears in the 14th and 15th grounds of the motion for new trial, and which related to the sayings and doings of parties whose participation in the conspiracy was a question for the jury under the evidence.

7. Statements made by the deceased a few days before he was killed, as to getting information in reference to another person not connected with the crime under investigation in this case, as to an offense which such third person had committed, were irrelevant and immaterial, and should have been excluded upon timely objection.

8. Where the court, in admitting testimony objected to by the defendant, stated that the evidence was open to the objection made, that is, of irrelevancy, unless the connection of the defendant with the conversation to which the testimony related should be shown, but that the testimony would be admitted "for the present," if no evidence connecting the defendant with the conversation was subsequently introduced, counsel for the accused should have called the court's attention to the tentative or conditional ruling and have requested the court to complete the ruling or to rule out the testimony; and having failed to do this, or failed to remind the court of the ruling in any way, they could not take advantage of it as a ground of a motion for new trial.

9. In ground 19 of the motion for new trial error is assigned upon the admission in evidence, over the objection that it was irrelevant, of testimony by one Easterling, a witness for the State, as follows: Question by the solicitor-general: "Which floor did Mr. Morgan room on at that time?" Answer: "On the second floor." Q. "How near to 208 and 207?" A. "Almost directly across the hall." The witness Easterling had just previously testified as follows: "I know a man by the name of Brad Morgan. I had a clerkship at the Georgian Terrace Hotel. I had been employed at the Henry Grady prior to going there. While I was at the Henry Grady, Lance was occupying a room there. I could not say how long Morgan was at that hotel during the time that Lance stayed there. He was there when I went there. That is where I met him—at the Henry Grady. I worked at the Henry Grady two months and ten days. I went to the Georgian Terrace June 7.

Morgan transferred from the Henry Grady to the Georgian Terrace the latter part of June, probably the first of July. I was on duty as clerk at that hotel the night of July 29, 1926. A man appeared there and registered. He gave his name as W. B. Sands. He was assigned to room 322. He asked particularly ⸜for room 207 or 208." While because of its immateriality the admission of this evidence over objection might not be sufficient ground for the granting of a new trial, nevertheless it was irrelevant; and if offered upon the next trial and objected to upon the same ground, it should be excluded.

10. The court did not err in admitting in evidence the testimony of a witness for the State, set forth in grounds 20, 21, 22, and 24 of the motion for new trial.

11. The evidence of the absence from home of the mother of the defendant in this case, at or about the time of the commission of the crime for which the defendant was on trial, was irrelevant and should have been excluded upon objection based upon that ground; there being nothing to show that the mother of the defendant was cognizant of the alleged conspiracy or had any connection with it, or that her departure from home was in furtherance of the conspiracy or had any relation to it.

12. While a witness can not be corroborated as to her testimony tending to show the facts of a homicide by evidence of her having previously related the same facts to other parties, nevertheless, if there be an effort to show that she kept silent as to the occurrence for a long time, it is competent to prove that she did tell other parties about the matter, though what statements she made in reference to it would not be admissible.

13. The court admitted, over objection, a card identified by a witness for the State as being a record of a telephone call made from Chattanooga, Tennessee, on the night of July 28, 1926, by a person by the name of Hill to telephone number Ivy 1053, Atlanta; and a similar card containing the record of a telephone call from a person by the name of Summers, in Atlanta, calling Hemlock 4840, to a person by the name of Hall in Chattanooga. Each of these cards had notations showing time of filing, places from which and to which sent, the operator, the number of the telephone called, etc. The court also admitted in evidence the registry sheet of a hotel in Chattanooga, Tennessee, of the date of July 25, 1926, whereon appeared the names of G. C. Akin and R. H. Hall, St. Louis, and the rooms to which they were assigned; also the registry sheet of the Georgian Terrace Hotel, Atlanta, Georgia, of date July 26, 1926, whereon appeared the name of J. H. Summers, Detroit, assigned to room 313, and the names of R. V. Rhodes, Richmond, Virginia, and H. H. Hall, Richmond, each assigned to room 922. Objections, on the ground of irrelevancy, were made to each of these telephone records and to each of the registry sheets. *Held*, that, inasmuch as the name of J. H. Summers appeared upon the registry sheet of the Georgian Terrace Hotel, and because of the location of the room to which he was assigned with reference to the room in which the murder of Donaldson was committed, and other facts appearing in the record, it was not error to admit the registry sheet of the Georgian Terrace Hotel; but the cards showing the record of telephone calls and the

2

registry sheet of the Patten Hotel in Chattanooga were not relevant under any of the evidence in the case.

14. The court did not err in admitting in evidence an indictment in Fulton superior court, returned on August 21, 1925, against Jack Lance and two other persons, charging them with the offense of larceny after trust, there being some evidence to show that Bert Donaldson had to a certain extent been instrumental in procuring this indictment; inasmuch as the court instructed the jury that the indictment was admitted merely for the purpose of showing motive, and that the jury "would not be interested in nor concerned with any other question that might be illustrated by the indictment."

15. Inasmuch as the judgment refusing a new trial is reversed upon other grounds, it is unnecessary to pass upon the question as to whether or not the court erred in overruling the motion for a mistrial. Nor is it necessary to pass upon the question of the disqualification of a juror who, as was insisted by movant, was disqualified because of the existence of certain facts shown in the record, as it is not probable that the same question and situation will arise upon the next trial. And for the same reason it is unnecessary to pass upon the ground of the motion based upon newly discovered evidence, as this question can not arise at the next hearing.

No. 6230.  FEBRUARY 15, 1928.

Murder. Before Judge Howard. Fulton superior court. August 13, 1927.

*Branch & Howard, John F. Echols, Eugene Dickey, Aldine & Hewitt W. Chambers,* and *W. Paul Carpenter,* for plaintiff in error.

*George M. Napier, attorney-general, John A. Boykin, solicitor-general, T. R. Gress, assistant attorney-general, E. A. Stephens,* and *J. W. LeCraw,* contra.

BECK, P. J.  Jack Lance was convicted of murder, under an indictment charging him and others jointly with the murder of Bert Donaldson. In accordance with the conviction, Lance was sentenced to be electrocuted. He filed his motion for new trial, and later amended it; to which the State filed a counter-showing with affidavits to rebut the contentions made. After a hearing thereon, the judge overruled the motion for new trial; to which judgment movant excepted and brought this writ of error.

1. There are numerous exceptions to the rulings of the court in admitting testimony over objection of the defendant. In the 6th ground of the motion for new trial error is assigned upon the admission of the following testimony of W. J. Robinson, a witness for the State: "I saw Jack Goodman in the Henry Grady Hotel, the night after the murder. He was standing in the lower lobby, straining his eyes on a paper in a very dark light, not much,

reading about the murder. There was no one close to him. He was in the second lobby of the Henry Grady. He did not come up the first steps. Mr. Jack Lance went up on the elevator. He had the paper something like this [indicating]. I was looking at him. I was wondering why he did not come out where he could read it good. I know Jack Goodman well: I thought he was straining his eyes. I knew the piece was in the paper, because I had just read it myself." The objection urged was that the testimony was irrelevant. Jack Goodman, referred to in this testimony, was a defendant under indictment, being charged with the murder of Bert Donaldson, and the State contended that he was joint conspirator with the movant; and when the objection was made, the solicitor-general stated in the presence of the jury, in response to an inquiry from the court, that Goodman was under indictment, and that the prosecution had a right to show the disappearance and flight of all these parties. In the 7th ground of the motion complaint is made that the court admitted, over the objection that it was irrelevant, testimony of the same witness tending to show that after the murder of Donaldson, Ed Lee Thompson, jointly indicted with Lance and Goodman, had fled. The witness had previously testified: "I know a man named Jack Goodman. I saw him on the street, and I saw him out in Cobb County. I often saw him around the Henry Grady Hotel. I have seen him in company with Lance, prior to the Donaldson murder. I have seen them around together very often." The testimony objected to falls under the rule that acts and declarations of one of the conspirators, made after the enterprise is ended, are admissible only against himself. Lance alone was on trial, and the other conspirators were not on trial. If they had been on trial, their acts and declarations would have been admissible against them. "After the fact of conspiracy is proved, the declarations of any one of the conspirators during the pendency of the criminal project are admissible against all." Penal Code, § 1025. "The confession of one joint offender or conspirator, made after the enterprise is ended, is admissible only against himself." § 1035. Conceding that there was sufficient evidence to show prima facie that there was a conspiracy participated in by Lance and the various persons in regard to whose conduct the witness was allowed to testify (and upon this point we neither express nor intimate

an opinion), it is manifest that the evidence objected to related to conduct upon the part of the alleged conspirators after the purpose of the conspiracy had been accomplished. The object of the alleged conspiracy was to murder Bert Donaldson, and after his murder was accomplished the joint enterprise ended, and evidence of what the individual conspirators did thereafter was not admissible as against any one of the others. In the case of *Wall* v. *State,* 153 *Ga.* 309 (112 S. E. 142), it was said: "Acts and declarations of a codefendant or alleged conspirator are admissible against the other only when made and done during the pendency of the criminal enterprise and in furtherance of its object. The declarations or conduct of one joint conspirator, made after the enterprise is ended, are inadmissible except against the person making them, and against others must be rejected as narrative merely of past occurrences. . . Proof of acts of an alleged conspirator, after its termination, are not admissible against another alleged conspirator." In the decision from which this quotation is taken are citations of rulings which state the same rule as that laid down in the *Wall* case, and the cases cited contain numerous illustrations of the rule which we have announced; and further citation of authorities here is unnecessary.

2. Under the foregoing ruling the court erred in admitting evidence similar to that already held to be objectionable, which related to acts or tended to prove acts of the alleged joint conspirators after the conclusion of the enterprise which formed the object of the conspiracy. This covers the assignments of error in grounds 8, 9, and 10 of the motion for new trial: the evidence in these grounds being the testimony of Robinson, a witness for the State, that since a week or two after the murder of Bert Donaldson he had not seen Jack Goodman any more, and that witness had not seen Whitey Jones, another of the alleged conspirators since Donaldson's murder; and further testimony of the same witness, that since the murder he had not seen Ralph Lovett, one of the defendants indicted and charged with the murder of Bert Donaldson. Though it might have been competent to prove that Lance met and was seen with these alleged conspirators, for the purpose of showing the intimacy and association with them as a fact illustrating the existence of a conspiracy between them before the murder of Donaldson, what these conspirators did after that

murder was accomplished, not in company with Lance or when he was present, was inadmissible under the ruling which we have made.

3. The court did not err in allowing a witness for the State to testify, over objection that the testimony was irrelevant, "that he had seen Jack Lance, Whitey Jones, Smitty Batchelor, Abe Nissenbaum alias Sparkplug, and a man named George O. Young in company with this defendant, Jack Lance, very often prior to the murder of Bert Donaldson; that he had seen them together around the Henry Grady Hotel pretty often, and up and down the streets," all the persons named in this testimony, except one, being jointly indicted with Lance for the murder of Donaldson. It is manifest that the evidence objected to was one of the necessary steps to prove the conspiracy. Not all of the elements of a conspiracy can usually be proved by the same witness; different facts and happenings take place at different times, which can rarely be all shown at once or by the testimony of the same witness.

4. Evidence to show that a woman by the name of Yvonne Jones occupied a room at the Henry Grady Hotel during the time when this defendant was occupying a room at the same hotel, just prior to the alleged murder of Bert Donaldson, was not objectionable on the ground that it was irrelevant, in view of other evidence in the case. Evidence to show who were the occupants of the various rooms in the hotel when the accused was occupying a room there, within a short time before the alleged murder, and evidence of the general surroundings, was not objectionable; though, unless it was shown that the woman named had some connection with the crime or participated in some way in the commission thereof, it would have practically no materiality. Besides, there was evidence that Yvonne Jones frequently associated with Mickey Hughes, who was staying at the Henry Grady Hotel, and that Mickey Hughes drove Lance's automobile. While it may be that there is not sufficient evidence to connect Yvonne Jones and Mickey Hughes with any conspiracy to murder Donaldson, nevertheless it was competent to bring out the relationship of Yvonne Jones and Mickey Hughes to the accused, as it would be a question for the jury to decide, under all the evidence, whether at this critical time the defendant had surrounded himself with a crowd of associates upon whom he could rely for information. The evidence was not

altogether immaterial, and the court did not err in admitting it.

5. The evidence the admission of which is complained of in the 13th ground of the motion, to the effect that Nell Oberlin had a room at the Henry Grady Hotel and was at the hotel on the night previous to the night of the alleged murder of Bert Donaldson, was not irrelevant in view of other evidence in the case, especially that of Mrs. Morris, who testified that the witness's daughter married Joe Lance, a brother of Jack Lance, and the witness had lived in the home with her daughter and son-in-law and other members of the Lance family for several months, and was living there on July 29, 1926, at the time Bert Donaldson was murdered; that on the day after Bert Donaldson was murdered a man whom she understood to be Jack Lance came to the Lance home, in company with others, including Nell Oberlin and a man whom the witness understood to be Ralph Lovett, and that they brought with them a shotgun, a gray suit of clothes, and a roll of money, which they hid in a wardrobe in the house; that the shotgun had previously been taken from the house and carried away and a part of it sawed off; that the man whom she understood to be Jack Lance and who was called Jack Lance and the others in his presence, stated in effect that Bert Donaldson had been killed, and that he would not trouble them any more, and that they had got their revenge out of Bert Donaldson.

6. In the 14th ground of the motion error is assigned on the admission in evidence of the testimony of Margaret Johnson, a witness for the State, to the effect that she had talked to Ralph Lovett on the afternoon of the day that Donaldson was murdered, and that the conversation was as follows: "He asked me where I was going. I said, 'I am going to have something to eat.' He said he would come along but he had a very important engagement. He did not say when that engagement was. He did not set any definite time. That was near five o'clock on the afternoon of July 29th." The admission of this evidence was not error, there being some evidence tending to show a conspiracy between Lovett, Jack Lance, and other persons to murder Bert Donaldson. And this ruling is applicable to the assignment of error upon the admission of the evidence set forth in ground 15 of the motion.

7. The court permitted a witness for the State to testify in part as follows: After Bert Donaldson had returned from a trip out

west, a few days before he was murdered, he "mentioned after he came back, one day he told me he thought he had some one working, and he was going to get a tip on Jack Wilson soon. He was in the office on Monday, Tuesday, Wednesday, and· Thursday. I think it was on Wednesday when he made that statement to me. I won't be positive. It seems like it was the third day he was here. He was in the office Monday morning. He came in Sunday, he said. He was sitting at the desk when I walked in. The Jack Wilson that I refer to is the one that was indicted for murdering Mr. Cheek, the groceryman." And the same witness was permitted to testify, in response to a question by the solicitor-general, as follows: Q. "Did Mr. Donaldson make any statement to you on the day he was last in the office, July 29th, as to any call or mission he had?" A. "He told me that morning to listen out for his telephone. It was a conversation I had with him the day he was killed that night. He told me to listen out for his telephone calls, and whenever he went out he told me usually where I could reach him at lunch in case there was a telephone call for him. I said, 'Is it very important?' He said, 'Yes, I am looking for a message that will give me a tip on Jack Wilson.' He said, 'I am going to catch him yet, before I quit.' Whenever he got any message where Jack Wilson's name was mentioned, he got his hat and was gone that quick, because he said he was going to get him if it was the last thing he did. Of course, when he did not show up next morning I thought that maybe he was out hunting him." The objection to these two pieces of evidence was that they were irrelevant and hearsay. This objection should have been sustained. Statements made by Bert Donaldson to the witness, of what he expected or hoped in reference to getting a "tip on Jack Wilson," the latter being in no way connected with the crime with which this defendant was accused, was irrelevant, and a part of it was hearsay. In *Tiget* v. *State,* 110 *Ga.* 244 (34 S. E. 1023), it was held that "It was error, in the trial of one charged with murder, to admit, over proper objection by defendant, the evidence of a witness introduced by the State, to the effect that a day or two previously to the homicide witness asked the deceased when he was coming to see him; that deceased replied he did not know, that he might be dead before he got a chance to come, that he expected to be killed, and that the man he expected to do it lived

two or three steps from his door." In *McCray* v. *State,* 134 *Ga.* 416 (68 S. E. 62, 20 Ann. Cas. 101), it was held: "Declarations made by the deceased in reference to his motive in seeking to find the accused, though made while on his way to the scene of the homicide in quest of the accused, were not admissible, over the objection of the accused, for the purpose of showing that the intention of the declarant in seeking the accused was peaceful and lawful." And in *Woolfolk* v. *State,* 81 *Ga.* 551 (8 S. E. 724), this court held: "Declarations made by one of the persons killed to her father, nearly a week before the killing, as to her fear that her life was in danger from the defendant, and that from the way he treated her she expected to be killed, were inadmissible."

8. J. R. Ferrell, a witness for the State, was permitted to testify, in substance, that he heard Donaldson, the deceased, talking over the telephone on the night of July 28, the night preceding his murder; that the telephone conversation occurred about eight o'clock that night. The witness could not say where the call was from. The solicitor-general then asked the witness the question: "In this conversation over the telephone did you hear Mr. Donaldson say anything in response to the person who was talking to him?" The defendant's counsel objected on the ground that the question called for hearsay testimony from the witness. The court inquired of the solicitor-general, "What is the purpose of this testimony?" The solicitor-general replied: "The purpose is to show that Jack Lance was in Chattanooga, Tennessee, calling up Bert Donaldson that night to make an engagement for the succeeding night, and the conversation indicated he would do it." The court ruled as follows: "This testimony would not be admissible unless coupled up with some conversation with the defendant. I will admit it for the present." Whereupon the solicitor-general asked, "What was Mr. Donaldson's statement in that conversation?" The witness answered, "Well, it was very brief. I only heard him say, 'Well, I will see you tomorrow night.'" It is insisted that the admission of this testimony was harmful and prejudicial error as against the defendant, and that there was no evidence to show that he was in any way connected with the telephone conversation. If the defendant was in no way connected with the telephone conversation, it was error to admit this evidence; but the ruling was to a certain extent tentative, the court saying, "This testimony

would not be admissible unless coupled up with some conversation with the defendant," and then adding: "I will admit it for the present." Where evidence was admitted under such a ruling, showing that its admission was conditional, counsel for the defendant, if no evidence was subsequently introduced coupling the defendant with the conversation, should have called the judge's attention to the ruling and requested him to complete the ruling or rule out the evidence. Having failed to do this, he can not avail himself of the ruling of the court. *American Chemical Co.* v. *Rhodes,* 139 *Ga.* 495 (77 S. E. 582).

9. No discussion is necessary in regard to the ruling on the testimony of the witness Easterling, of which complaint is made in the 19th ground of the motion for new trial, and which relates to the location at the Georgian Terrace Hotel of the room of a person by the name of Morgan, and as to Morgan's removing from the Henry Grady Hotel to the Georgian Terrace Hotel.

10. In view of other evidence in the case, the court did not err in admitting in evidence the testimony of Mrs. Lula Morris, a witness for the State, of which complaint is made in grounds 20, 21, 22, and 24 of the motion for new trial. In many portions the testimony given by Mrs. Morris is vague and indefinite, and there are circumstances indicating that she did not even recognize Jack Lance; but the court properly admitted the evidence for the consideration of the jury, as it was for them to say whether or not she recognized Lance, and whether certain parts of her testimony, though very vague, related to Lance or to some other person. Clearness and precision in the giving of testimony can not always be obtained, however much counsel may endeavor to confine the witness to the precise point in question. The privilege of cross-examination is given to counsel for the defendant when a witness for the State is on the stand, and by cross-examination he can develop any uncertainty or want of memory or want of knowledge on the part of the witness under examination; and upon that right of extensive and searching cross-examination he can rely to show the worthlessness of the testimony of the witness for the State, if it be worthless, and not upon any supposed right to have the testimony, though vague and indefinite, excluded from the consideration of the jury by the court.

11. In ground 23 of the motion it is contended that the court

erred in admitting, over objection that it was irrelevant and hearsay, the following testimony of Mrs. Lula Morris: Q. "Did Mrs. Lance, the mother of these Lance boys, make a trip off anywhere?" A. "She went off." Q. "Did Mrs. Lance, the mother of these boys, go to Alabama?" A. "She went off, and told me she went to Alabama." Q. "Did she go to Alabama?" A. "I reckon so; I thought she did. She told me she did. She said she went to Alabama to see some of her relations." This evidence should have been excluded. It is urged by counsel for the State that the part of the testimony last quoted, to the effect that Mrs. Lance had gone from her home during the happenings that were being narrated by Mrs. Morris, and which is not hearsay but a statement of fact, was relevant to show "who was gone from the Lance home at a time when such important happenings were taking place." We can not agree to this contention of counsel for the State, that this evidence was of sufficient relevancy to render it admissible. It is of slight materiality, it is true, and we would not reverse the judgment refusing a new trial upon this ground alone; but as the case is remanded for a new trial, we make the ruling that it is irrelevant, that the court may, if it is offered again, exclude it.

12. The solicitor-general propounded to Mrs. Morris the following question: "Did you ever tell Mrs. Cora Lee Mashburn about this case?" And the answer of the witness to this question, over the objection that it was irrelevant, incompetent, and hearsay, was admitted by the court; the answer being: "I guess I told Mrs. Mashburn, who lives at 218 Echo Street, a few things concerning this murder. I guess so. I told a few things to Mr. Ben Helton about this, the gentleman I worked with. This same thing. As best I can judge, not to be accurate, since I told Mrs. Cora Lee Mashburn I expect it has been right about three or four months, I guess, because it has been about that long before I have been to her house. It has not been that long since I told Mr. Helton, but as near as I can estimate it, I guess not far from three months. It sure has been." Upon the ruling admitting this evidence error is assigned in the 25th ground of the motion. And in the 26th ground error is assigned upon the admission of the evidence of the following testimony of G. C. Mashburn, a witness for the State: "Mrs. Lula Morris did work in my home." Q. "While she was at your house working, did she or not tell you and your wife about

the Donaldson case?" A. "Yes, she did report to me, discuss with me and talk with me, and told me some certain things that she knew concerning the Donaldson murder. That has been about three months ago, I suppose." It will be observed that this answer showed only that Mrs. Morris had made some statement about the murder of Bert Donaldson, but what facts she stated were not put in evidence. This evidence merely showed that she had told other parties about the occurrence; that she did not keep silent about it. And the court admitted it on the ground, as the court remembered (this being shown by a remark of the court to counsel when discussing the admissibility of the evidence), that counsel for movant had sought to discredit the witness by showing that she had kept silent as to the occurrence for a considerable time after the homicide; and it is inferable from some of the answers made on cross-examination by counsel for the defense that the court's recollection was correct. If there had been an effort to discredit the witness, either by the introduction of testimony for that purpose or by questions propounded to the witness herself on cross-examination, by showing that she had kept silent, the evidence was admissible; that is, merely as evidence showing that she had mentioned the matter to other parties or spoken of it to other parties. Of course she could not restate the facts narrated by her to them. This ruling is not in conflict with that made in *A., K. & N. Ry. Co.* v. *Strickland,* 116 *Ga.* 439 (42 S. E. 864). If upon the next trial of this case no effort is made to show that the witness, Mrs. Morris, had kept silent in reference to the homicide for a long time after the occurrence, then evidence of the character of that under consideration would not be admissible. What is said above sufficiently disposes of the assignment of error in ground 27 of the motion.

13-15. No further discussion of the rulings made in headnotes 13, 14, and 15 is deemed necessary.

*Judgment reversed. All the Justices concur.*

RUSSELL, C. J., concurring specially. I concur in the judgment of reversal, and in all the rulings except that in the 4th division of the opinion, in which it is held that the evidence relating to the occupancy of a room at the Henry Grady Hotel by a woman named Yvonne Jones was not objectionable on the ground of irrelevancy; for I am of the opinion that it was irrelevant and should have been excluded upon timely objection.