**EDWARDS v. UNITED STATES.**

No. 8513.

United States Court of Appeals,
District of Columbia.

Decided Dec. 6, 1943.

Writ of Certiorari Denied Jan. 31, 1944.

See 64 S.Ct. 523.

Mr. Hugh H. Obear, of Washington, D. C. (appointed by the District Court), for appellant.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and John C. Conliff and John P. Burke, Assistant United States Attorneys, all of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

This case provides a gratifying example of skilled and conscientious professional service rendered to an accused person by assigned counsel. Paradoxically, one of the contentions urged by appellant on this appeal challenges, indirectly at least, the propriety of counsel's own authority to appear in the case. However, his appearance was regularly entered, has remained unchallenged, and, as will appear, was eminently proper.

The question stated in appellant's behalf is whether the District Court had power to permit the withdrawal of counsel who represented appellant at the trial, after this court had acquired jurisdiction of the cause. It is to be noted in this connection that the withdrawal occurred after his notice of appeal had been filed, but before settlement of the bill of exceptions, designation of the record and assignment of errors. Specifically, sentence was imposed on April 21, 1943; on April 28th, trial counsel informed appellant that he intended to withdraw; on May 13, 1943, the trial court permitted his withdrawal; present counsel was assigned by the trial court on May 19, 1943; designation of the record and assignment of errors were filed on August 23, 1943, and the bill of exceptions was settled and filed the same day.

The Criminal Appeals Rules of the Supreme Court[1] govern procedure on appeal in criminal cases. Rule IV provides that: "From the time of the filing with its clerk of the duplicate notice of appeal, the appellate court shall, *subject to these rules,* have supervision and control of the proceedings on the appeal, including the proceedings relating to the preparation of the record on appeal." (Italics supplied.) Rules VII, VIII and IX reserve to the trial judge certain powers with respect to the preparation of the record on appeal. Rule VII makes it his duty to direct the appellant or his attorney to appear before him and, thereupon, to give to appellant or his attorney such directions as may be appropriate with respect to the preparation of the record on appeal including directions for the purpose of making promptly available all necessary transcripts of testimony and proceedings. For this purpose the rule provides further that: "The action and directions contemplated by this Rule may be had and given by the trial judge at *any place he may designate* within the judicial district where the conviction was had." (Italics supplied.) Rule VIII requires that in certain cases "the trial judge shall direct the appellant to file with the clerk of the trial court, within a time stated, an assignment of the errors of which he complains * * *." Rule IX requires that: "In cases other than those described in Rule VIII, the appellant, within thirty (30) days after the taking of the appeal, or within such further time as within said period of thirty days may be fixed by the trial judge, shall procure to be settled, and shall file with the clerk of the court in which the case was tried, a bill of exceptions setting forth the proceedings upon which the appellant wishes to rely in addition to those shown by the clerk's record as described in Rule VIII. Within the same time, the appellant shall file with the clerk of the trial court an assignment of the errors of which appellant complains. The bill of exceptions shall be settled by the trial judge as promptly as possible, and he shall give no extension of time that is not required in the interest of justice."

These rules are intended to be of general operation throughout the United States. A realistic interpretation, therefore, requires consideration of the situation which prevails in all circuits other than that of the District of Columbia, where the buildings which house the trial courts and the appellate court chance to be located in immediate contiguity. What would happen, for example, if an impecunious appellant in a remote district were required to secure action by the Court of Appeals in one of the large Southern or Western Circuits in order to be represented by counsel in preparing his record on appeal? We think there can be no doubt that the judge

---

[1] Rules of Practice and Procedure in Criminal Cases, 292 U.S. 660, as amended, 301 U.S. 717, 304 U.S. 592, 311 U.S. 731, 18 U.S.C.A. following section 688.

of the District Court, so far, at least, as he has power to direct and control the activities of lawyers practicing before him, has power also to permit withdrawal of counsel. We think this follows from the court's power [2] to appoint new counsel. To that extent supervision and control by the appellate court is limited.

■ A more serious question is whether appellant, being without counsel for a period of six days, suffered a violation of his constitutional privilege "to have the Assistance of Counsel for his defence." [3] There is no question that appellant had the assistance of exceptionally able counsel at every step of the proceedings and in the performance of every duty which counsel could perform in the perfection of his appeal. He enjoyed the services not only of Mr. Obear—who also represented him on this appeal—but of his former counsel as well. Mr. Martin, his trial counsel, whose withdrawal precipitated the present question, participated with Mr. Obear in the conferences with the trial judge when the bill of exceptions was settled. It is not suggested on this appeal that anything which properly could have been done in behalf of appellant was not done except that during six days when "the days and hours of defendant's appeal were running out like sand in an hour glass" appellant remained in jail, "all the while having a right to assume that his appeal was being diligently prosecuted and that his constitutional guarantee of counsel had not been impaired;" that during this period "steps *could* have been taken and, in view of the fact that defendant was in jail, *should* have been taken to expedite his appeal."

It is urged that under the circumstances appellant was denied the assistance of counsel within the meaning of the phrase, *at every step of the proceedings,* which has been added, by interpretative elaboration, to the language of the Constitution.[4] Although it has not said so in express terms, this court has in several recent cases held in effect that the requirement of representation by counsel at every step of the proceedings does not compel such a strict application as is contended for in the present case.[5] In at least one [6] of those cases the period during which the accused suffered from lack of representation was much longer and the rights of the accused were much more seriously prejudiced than they could possibly have been in the present case. In view of the Supreme Court's intervening decision in the Glasser case,[7] our decision in the Neufield case was wrong.[8] But no issue was made in that case of lack of representation pending trial or pending appeal. Nor was such an issue presented in any of the cases to which our attention has been called by counsel.

■ The phrase, every step of the proceedings, does not refer to mere lapses of time.[9] It contemplates effective aid of counsel in the preparation and trial of the case.[10] It is true that denial, for a long time, of opportunity for conference and

[2] See 18 U.S.C.A. § 563; 28 U.S.C.A. § 835; Betts v. Brady, 316 U.S. 455, 471–472, 62 S.Ct. 1252, 86 L.Ed. 1595; Powell v. Alabama, 287 U.S. 45, 73, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Brown v. State, 52 Tex.Cr.R. 267, 106 S.W. 368; State v. Bersch, 276 Mo. 397, 424, 207 S. W. 809, 817; People v. Nelson, 188 N.Y. 234, 80 N.E. 1029.

[3] U.S.Const. Amend. VI.

[4] Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Johnson v. Zerbst, 304 U.S. 458, 463, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; Evans v. Rives, 75 U.S.App.D.C. 242, 250, 126 F.2d 633, 641; Wood v. United States, 75 U.S.App.D.C. 274, 280, 128 F.2d 265, 271. See Avery v. State of Alabama, 308 U.S. 444, 450, 60 S.Ct. 321, 84 L.Ed. 377.

[5] McJordan v. Huff, 77 U.S.App.D.C. 171, 133 F.2d 408; Alexander v. United States, U.S.App.D.C., 136 F.2d 783; Neu-field v. United States, 73 App.D.C. 174, 118 F.2d 375.

[6] Neufield v. United States, 73 App.D.C. 174, 118 F.2d 375.

[7] Glasser v. United States, 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680: "There is yet another consideration. Glasser wished the benefit of the undivided assistance of counsel of his own choice. We think that such a desire on the part of an accused should be respected. Irrespective of any conflict of interest, the additional burden of representing another party may conceivably impair counsel's effectiveness."

[8] In expressing the view that the decision in the Neufield case was wrong, I speak only for myself. Judges Groner and Edgerton express no opinion on that subject and regard the question as irrelevant in the decision of the instant case.

[9] See Rogers v. State, 211 Ind. 47, 5 N. E.2d 509.

[10] Powell v. Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527.

consultation with counsel, might· result in a deprivation of the Constitution's guarantee of assistance.[11] Ordinarily this would be manifested by inadequate representation at the preliminary hearing,[12] at the arraignment,[13] during the progress of the trial,[14] or in connection with the filing of notice of appeal, settling the bill of exceptions, designating the record and assigning errors.[15] There was no such denial of opportunity or deprivation of the Constitution's guarantee in the present case.

■ Neither is there merit in the contention that error resulted from the trial court's acceptance of trial counsel's withdrawal, out of appellant's presence and without his knowledge and consent. This occurred after counsel had completed his service as assigned trial counsel, had protected appellant's interests by filing notice of appeal and had notified appellant of his intention to withdraw. Such acceptance, by the court, of counsel's withdrawal after filing notice of appeal was not in any sense a "stage of the trial" at which it is the right of an accused to be present in person.[16] The cases cited to support appellant's argument upon this point relate to happenings during the course of the trial.[17]

One other question remains for decision, namely, whether the evidence was sufficient to justify a conviction. The evidence showed that the crimes of housebreaking and larceny were committed in a· store building by two men. Theodore Anderson was identified as one of the two and pleaded guilty. The question turns, therefore, solely upon the question of identification of the second participant. The evidence offered to prove that appellant was a participant, briefly summarized, was as follows: (1) The only eyewitness of the crime, the janitor of the building, testified that one of the criminals pointed a revolver at him and told him to back up; he watched the man with the gun very carefully and identified as that person Theodore Anderson, who was brought to the courtroom and shown to the witness. He testified that the other participant was another colored man but he did not get a sufficient view of the latter to identify him; that while Anderson held the gun on him, the other man went into the building and came back with some of the stolen clothing; whereupon both men ran from the building. (2) A police officer testified that, approximately one week after the crime was committed, he arrested Theodore Anderson and appellant whom he found together in Anderson's room; that at the time of the arrest he recovered from Anderson a revolver which another witness had previously identified as part of the stolen property; that at the same time appellant was wearing a suit of clothes and had in his possession a new pocket penknife, both of which were also identified as part of the stolen property. (3) The owner of the store identified the several articles as part of the. property stolen at the time of the crime. No evidence was offered to explain appellant's possession of the stolen property or his association with Anderson.

■ This court has held that possession of recently stolen property, unexplained, is sufficient to support a verdict of guilty in larceny.[18] Housebreaking, robbery and burglary are merely aggravated forms of larceny[19] and there is no reason why evidence competent in one case should not be competent, also, in the others.[20] In fact, the Supreme Court has extended

---

[11] Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377.

[12] Wood v. United States, 75 U.S.App. D.C. 274, 279, 128 F.2d 265, 270.

[13] McJordan v. Huff, 77 U.S.App.D.C. 171, 133 F.2d 408.

[14] See Ah Fook Chang v. United States, 9 Cir., 91 F.2d 805, 810; People v. Hull, 251 App.Div. 40, 296 N.Y.S. 216. Cf. Grock v. United States, 53 App.D.C. 146, 148, 289 F. 544, 546.

[15] Cf. Johnson v. Zerbst, 304 U.S. 458, 461-462, 467, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357.

[16] See Frank v. Mangum, 237 U.S. 309, 338-343, 35 S.Ct. 582, 59 L.Ed. 969; Lovvorn v. Johnston, 9 Cir., 118 F.2d 704; United States ex rel. Campbell v. Bishop, 5 Cir., 47 F.2d 95, 97; Shields v. United States, 273 U.S. 583, 589, 47 S.Ct. 478, 71 L.Ed. 787.

[17] Shields v. United States, 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787; Johnson v. United States, 71 App.D.C. 400, 110 F.2d 562; Duffy v. State, 151 Md. 456, 475, 135 A. 189, 196; State v. Shutzler, 82 Wash. 365, 144 P. 284; Fina v. United States, 10 Cir., 46 F.2d 643.

[18] Tractenberg v. United States, 53 App. D.C. 396, 293 F. 476.

[19] Lamore v. United States, —— U.S.App. D.C. ——, 136 F.2d 766. See United States v. Dixon, 25 Fed.Cas. page 872, No. 14,-968.

[20] McNamara v. Henkel, 226 U.S. 520, 524-525, 33 S.Ct. 146, 57 L.Ed. 330; Con-

the rule so far as to declare that possession of the fruits of crime, recently after its commission, may be of controlling weight in a *murder* case, unless explained by the circumstances or accounted for in some way consistent with innocence.[21] A further important consideration is that appellant was found in unexplained association with Anderson who was later jointly indicted with him and was a confessed participant in the crime.[22] It is also important that when they were found together each was in possession of some of the stolen property.[23] Each of these circumstances constitutes some evidence of guilt. Evidence of all taken together, unexplained and unaccounted for as in the present case, is more persuasive than would be evidence of either alone.

We see no reason to question the judgment of the trial court.

Affirmed.

---

sidine v. United States, 6 Cir., 112 F. 342, 349–350, certiorari denied 184 U.S. 699, 22 S.Ct. 938, 46 L.Ed. 765. See Tot v. United States, 319 U.S. 463, 467, 63 S.Ct. 1241, 87 L.Ed. 1519. See also, Note, 12 L.R.A.,N.S., 199, 210.

[21] Wilson v. United States, 162 U.S. 613, 619, 16 S.Ct. 895, 40 L.Ed. 1090.

[22] Smith v. State, 96 Tex.Cr.R. 188, 256

S.W. 262; Duffy v. State, 151 Md. 456, 461, 135 A. 189, 191; Lance v. State, 166 Ga. 15, 21, 142 S.E. 105, 108; People v. Childs, 127 Cal. 363, 59 P. 768.

[23] Branson v. Commonwealth, 92 Ky. 330, 17 S.W. 1019; State v. Bengson, 165 Wash. 612, 5 P.2d 1040; Webb v. State, 102 Tex.Cr.R. 284, 278 S.W. 221.