Monroe B. HARRIS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16007.

United States Court of Appeals
Ninth Circuit.

Dec. 1, 1958.

Rehearing Denied Jan. 12, 1959.

898

Samuel C. McMorris, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Bruce A. Bevan, Jr., Robert John Jensen, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

A jury found the appellant guilty of the offense of breaking into a building used as a post office, in violation of Section 2115, Title 18 U.S.C.A.[1] Upon imposition of sentence, a timely appeal was filed in this Court.

The original indictment charged the appellant Monroe B. Harris, one Thomas B. Venters and one George W. Jack, with the commission of the offense. At the commencement of the jury trial, on motion of counsel for the United States, the indictment was dismissed as to the defendant Thomas B. Venters and he was charged by information of the offense of having received stolen property with knowledge that the same had been stolen. Without objection on the part of the appellant, the trial court consolidated for trial the offense charged in the indictment and the offense charged in the information. At the conclusion of the testimony, on motion of counsel for the United States, the charge in the indictment was dismissed as to the defendant

George W. Jack on the ground of insufficiency of the evidence, and a judgment of acquittal was entered as to that defendant. The jury returned its verdict finding the appellant guilty of the offense charged in the indictment, and finding the defendant Thomas B. Venters guilty of the offense charged in the information. No appeal was taken by the defendant Venters.

The specifications of error relied upon by appellant are:

1. Insufficiency of the evidence to support the verdict of guilty;

2. Hearsay evidence was admitted against the appellant which was prejudicial and deprived the defendant of a fair trial;

3. Violation of due process resulting from the admission of testimony of the government's witness, Marvin Williams;

4. Alleged misconduct on the part of the prosecuting attorney; and

5. Alleged failure on the part of the trial court to properly instruct the jury.

Before considering the specifications of error, we will briefly summarize the testimony which was before the jury for consideration. In the early morning hours of July 8, 1956, at approximately one a.m., one Robert E. Lee, who lived opposite the United States Post Office in question, heard a noise and upon looking out of his rear window saw men in the alley behind the post office and heard their voices. In addition, Mr. Lee also observed a truck with the red letters "Central" on top thereof.

At approximately two a.m. of the same morning, Mr. Lee again heard a noise from the rear of the post office and called the police. He saw an object on the ground in the alley behind the post office, and when he later went to the rear of the post office after police had arrived he observed a large safe lying on the ground in the same position in which he had

[1]. Sec. 2115. "Post office—Whoever forcibly breaks into or attempts to break into any post office, or any building used in whole or in part as a post office, with intent to commit in such post office, or building or part thereof, so used, any larceny or other depredation, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

previously observed the object from his window.

Later examination of the building in which the post office was located revealed that there was a hole in the roof caused by the removal of roofing paper and approximately four or five pieces of one by six planking. The hole was large enough to permit a person to gain access to the inside of the post office. In addition, the rear platform doors of the post office were open, as well as the door to the inspector's lookout which opened off of the back platform. Two safes, one large and one small, had been removed from the premises, and the petty cash drawer of the post office had been pried open and ninety-five cents in change was missing. The large safe which was missing from the inside of the post office was found to be lying on its side in the loading dock area just off of the platform at the rear of the post office.

The appellant concedes in his brief, as indeed he must, that the post office building had been broken into and the post office burglarized.

The appellant was arrested by a Los Angeles police officer approximately one and one-half blocks from the post office at approximately three a.m. on the morning of July 8, 1956. For some twenty-five minutes prior to the arrest of the appellant, the officer had under surveillance a truck bearing the red letters "Central" which was parked on the street. The officer saw appellant approach on foot, get into the truck and drive the same away for approximately a block and a half, at which time the officer placed the appellant under arrest. The rear of the truck platform was found to be damaged.

Upon searching appellant, the officer observed that dirt was matted in his hair, his hands were scraped and bleeding, and there was blood upon the appellant's shirt. Appellant told the officer that he did not know anything about the truck and that he had obtained three rides that evening by hitch-hiking. The appellant further stated that the last person that had given him a ride, a man in a green 1956 Chevrolet automobile, had asked him if he would like to make three or four dollars by driving a truck, to which appellant assented since he did not have any funds on him. Appellant stated that he was driven to the location of the truck by the man in the green Chevrolet sedan.

The only witness testifying on behalf of the appellant stated that he had met the appellant in the early morning hours of July 8, 1956, and had driven him to the vicinity of the truck. The police officer testified that no automobile drove the appellant to where the truck was parked. At the time of the appellant's arrest approximately $3.40 was found on his person. The police officer asked the appellant if he knew a man by the name of Marvin Williams. Appellant stated that he did not. However, in appellant's possession at the time of his arrest was a notebook containing the name, address and phone number of Marvin Williams.

The defendant Venters (charged with having received stolen property) testified that appellant came to his home on the morning of July 7, 1956, and asked him if he could rent a garage for a friend by the name of Williams. The small safe which had been taken from the post office was found in Venters' garage.

The government's witness, Marvin Williams, testified that between 1:30 and 2:00 a.m. on July 8, 1956, the appellant came to his home and asked him to help the appellant move something; that Williams then went to an automobile with the appellant and, together with the defendant Venters, drove to the vicinity of the post office; that Williams observed a large safe lying on its side on the ground behind the post office, and that appellant then stated to the persons present, "Let's see if we can lift this."

On cross examination by counsel for the defendants Williams testified that he was arrested on July 8, 1956, taken to police headquarters, and was thereafter beaten. He testified that he was arrested by the police officers, and not by the men from the Post Office Department. Williams testified that when he was first arrested he told the officers a lie, to the

effect that he had been in the vicinity of the post office to get a drink and did not know anything else about the post office. Later, following the alleged beating by the officers, Williams testified that he told the officers that his previous statements were untrue, and that he then told them the truth, and that his testimony before the jury was true.

■ It is the appellant's contention, under the specification of insufficiency of the evidence to support the guilty verdict, that unexplained possession of stolen property is not by itself sufficient to justify conviction of burglary. Assuming appellant to be correct in his statement of law, which he is not, the record discloses much incriminating evidence against the appellant in addition to his unexplained possession of stolen property. Appellant was in possession of the stolen safe in the morning hours in the back of the just burglarized post office. Appellant attempted to lift the safe and attempted to secure assistance. He was arrested in the vicinity of the post office, and his appearance, together with other evidence before the jury, would reasonably support the inference that it was he who had gained access to the post office through the roof. Appellant made several statements to the police officers at the time of his arrest which were in conflict with other testimony which was before the jury. Appellant was in possession of a truck shortly after the burglary, and the jury could reasonably infer that the truck had been used to transport the small safe to the garage of the defendant Venters. Moreover, the garage in which the small safe was found had been rented by the appellant the day before the burglary.

■ There is abundant incriminating testimony in addition to the possession by the appellant of stolen property, and the jury was fully justified in reaching the guilty verdict. In support of his contention that unexplained possession of stolen property will not justify the conviction for burglary, the appellant relies upon a number of California decisions. Whatever the rule may be in California,

the rule in federal courts is to the contrary. See Booth v. United States, 9 Cir., 154 F.2d 73; Morandy v. United States, 9 Cir., 170 F.2d 5; Edwards v. United States, 78 U.S.App.D.C. 226, 139 F.2d 365; McNamara v. Henkel, 226 U. S. 520, 33 S.Ct. 146, 57 L.Ed. 330.

In respect to appellant's second specification of error relating to the admission of hearsay testimony, it appears that such testimony was offered and received only as against the defendant Venters, whose trial on the charge of having received stolen property was consolidated with the trial on the charge of burglary against the appellant. This testimony concerned admissions and statements made by the defendant Venters to the officers on July 8, 1956, following the arrest of Venters. Some of these statements and admissions made reference to the appellant's participation in the offense with which he was charged.

■ The testimony was offered by the prosecution and received by the court only as against the defendant Venters, and not as against the appellant. The trial judge repeatedly advised the jury that such testimony was to be considered by it only as against the defendant Venters. The prosecuting attorney repeatedly stated to the jury that such testimony was being offered only as against the defendant Venters. In view of the careful and repeated admonitions of the trial judge and of the prosecuting attorney that such evidence was offered and was to be considered by the jury only as against the defendant Venters and not against the appellant, we are satisfied that the jury fully understood such instructions and admonitions. To believe otherwise would be to disregard our system of expecting juries to follow the court's instructions. Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278.

■ Under appellant's third specification of error, appellant contends that he was not accorded due process because of the admission of the testimony of the government's witness, Marvin Williams. The witness Marvin Williams on direct

examination testified that the appellant came to his home in the early hours of the morning of July 8, 1956, and asked him to help him move something, and that Williams accompanied appellant and the defendant Venters to the vicinity of the post office, where Williams observed the large safe and appellant requested assistance in attempting to lift it.

On cross examination, it developed that when first arrested the witness told the officers that he had been in the vicinity of the post office to get a drink but did not know anything else about the post office, and that after he had been beaten by the officers at the jail he related the events to the officers which he later testified to in court. An examination of the record leads to the conclusion that any mistreatment of the witness was inflicted by the police officers who arrested the witness and took him to police headquarters, and not by any Federal or Post Office Department officials.

During the trial the trial judge carefully questioned the witness as to the truthfulness of his testimony, and it is apparent the trial judge was satisfied that the testimony related by the witness was true. Able counsel for the appellant made no motion asking the trial judge to strike the testimony of the witness Williams when it developed on cross examination that the witness had been mistreated by the officers. Counsel for appellant was granted wide latitude in cross examining the witness as to the circumstances surrounding his treatment by the officers, and his repudiation of the story first related by him to the officers. The jury was in possession of all of the facts surrounding the testimony of the witness, and were in a position to give such weight to his testimony as they felt it deserved. If the witness had been mistreated by federal officers, a grave question might arise as to the use of Williams' testimony. See Rochin v. People of California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183. After a careful examination of the record, we have reached the conclusion that any mistreatment of the witness was occasioned by the ar-

resting officers who were members of the Los Angeles Police Department. In any event, the appellant has failed to show that federal officers participated in such mistreatment.

■ The fourth specification of error relates to the alleged misconduct of the prosecuting attorney. At the close of the plaintiff's evidence, the counsel for the government suggested to the trial court that in his opinion the evidence was insufficient to justify a conviction of appellant's co-defendant, George W. Jack. The trial judge thereupon, on his own motion, dismissed the charge as to such defendant, and directed the entry of a judgment of acquittal. It is the appellant's contention that the remarks of government counsel "implied great fairness on the part of the government and further implied overwhelming evidence of appellant's guilt as the only reason that prosecution against the latter was not dropped."

In dismissing the charge against the defendant Jack the court stated: 'I want to instruct the jury in that respect that it is the position of the Court that no one should be convicted on suspicion. And because I am dismissing as to defendant Jack, it is not to be considered that the Court, in any way intimates or suggests that the Court believes or anybody else believes connected with the case that the other two defendants are guilty or not guilty. That is a matter that is entirely your problem."

We see nothing in the remarks of government counsel that constitutes misconduct. The trial court made it clear that in dismissing the charge against Jack he was in no manner indicating any view as to the guilt or innocence of the remaining defendants. Counsel for the appellant made no objections or motions with respect to the remarks of the government counsel. Furthermore, he made the most of the remarks of the trial judge when he stated in his closing argument: "Ladies, the Court said a wonderful thing when he dismissed this Jack boy. He said, 'You are not to convict on suspicion.' You remember that?"

■ Appellant also complains of certain remarks made by government counsel in his closing argument to the jury, in which he stated "that the jury was a part and parcel of * * * the administration of justice" and that thereby the prosecutor identified the members of the jury with law enforcement rather than with their position as impartial judges. No objections were made by counsel for the appellant to the remarks made by the counsel for the government, nor were any requests made to the trial judge to instruct the jury to disregard such remarks.

In Alberty v. United States, 9 Cir., 1937, 91 F.2d 461, 463, the assignments of error raised questions as to the propriety of government counsel's conduct. The court stated at page 463: "Whatever hesitation counsel may have regarding a claim of misconduct of a trial judge, there should be none in claiming it against the prosecutor. It should be made at once. The court should be given the opportunity for instant correction and, if the offense be sufficiently hurtful, declare a mistrial. Counsel cannot occupy the instruments of justice, the court and jury, in an extended trial and, without objection or motion for relief, raise such questions on appeal." The same view was expressed in Powell v. United States, 9 Cir., 1929, 35 F.2d 941.

It must be borne in mind that counsel for the government appears as an advocate, and in our view the remarks now complained of were well within the bounds of legitimate argument and advocacy. See Henderson v. United States, 6 Cir., 1955, 218 F.2d 14, 50 A.L.R.2d 754.

■ In appellant's final specification of error, he complains that the trial court failed to properly instruct the jury. The record fails to show that appellant objected to any instructions which the court gave, nor that the court failed to give any instructions which the appellant requested. Attention is called to Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which states in part: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

■ Nevertheless, we have carefully considered the instructions given by the trial court. Appellant first complains that the instruction as to reasonable doubt "would seem to place less than the well-established burden upon the prosecution." The trial court carefully and meticulously covered the burden of proof, presumption of innocence, and reasonable doubt, and appellant's contention in this regard is without substance.

■ Appellant next complains that the court should have given an instruction to the jury as to the testimony of an accomplice. The appellant has not designated the witness alleged to be an accomplice. While appellant asserts in his brief that the testimony of an unnamed accomplice was received, the record does not justify such assertion. Moreover, the trial judge instructed the members of the jury that they were the sole judges of the credibility and the weight to be given to different witnesses; that in judging the credibility of a witness the jury should consider the character of the testimony given, the motives of a witness, the presence or absence of contradictory or corroborative evidence, the circumstances under which any witness has testified, his demeanor, the relations which he bears to the government or to the defendant, and the manner in which he might be affected by the verdict. In the respect complained of the instructions given in this case were proper. See Diggs v. United States, 9 Cir., 220 F. 545, affirmed 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442. Careful examination of the record discloses that the appellant was accorded a fair trial, and the record fully supports his conviction.

Judgment affirmed.